**Lee S. KREINDLER, Plaintiff,**

v.

**DEPARTMENT OF the NAVY OF the UNITED STATES of America, Defendant.**

**No. 72 Civil 2053.**

United States District Court, S. D. New York.

Aug. 1, 1973.

Kreindler & Kreindler, New York City, for plaintiff; Melvin I. Friedman, Milton G. Sincoff, David Goldstein, New York City, of counsel.

Whitney North Seymour, Jr., U. S. Atty., S. D. N. Y., New York City, for defendant; Samuel J. Wilson, Asst. U. S. Atty., of counsel.

OPINION

EDWARD WEINFELD, District Judge.

On August 23, 1971, a Navy C–2A aircraft crashed into Chesapeake Bay, killing David Hauptman, a civilian passenger and employee of the Grumman Aerospace Corporation. Thereafter the Navy initiated two separate investigations: (1) one, conducted pursuant to "Navy Aircraft Accident, Incident and Ground Accident Reporting Procedures,"[1] which resulted in an Aircraft Accident Report (AAR); and (2) the other, conducted pursuant to sections of the Manual of the Judge Advocate General,[2] which resulted in the JAG Manual Investigation Report (JAG Report). The plaintiff, a member of a firm of attorneys retained by the surviving wife and children of Hauptman to determine whether a meri-

---

1. Naval Operations Instruction (OPNAVINST) 3750.6G.

2. 32 C.F.R. §§ 719.206(b), .601–09.

torious claim could be asserted for his wrongful death, on September 15, 1971, requested from the office of the Judge Advocate General a copy of the AAR and JAG Report, including the entire transcript of all proceedings, the testimony and statements of all witnesses, all exhibits, as well as any findings of fact, conclusions and recommendations made concerning the accident. Thereafter, defendant provided plaintiff with selected portions of the Navy's JAG Report, but denied the remainder of the request. This determination was appealed to the Secretary of the Navy [3] who, on April 13, 1972, provided plaintiff with medical documents from the JAG Report pertaining to the pilot and co-pilot of the aircraft, but affirmed the prior decision as to all other requested documents and information.[4] The material denied plaintiff consisted of entire AAR and with respect to the JAG Report, the name of the investigating officer, his opinions and recommendations, as well as those of the superior officers endorsing the report.

Plaintiff, after concluding that the material furnished was insufficient to enable him to determine if a meritorious cause of action existed for the wrongful death of Hauptman, commenced this action pursuant to the Freedom of Information Act (the Act) [5] to enjoin the defendant from withholding the AAR and the remainder of the JAG Report. Plaintiff contends that disclosure of those documents is mandated by the Act. The defendant resists disclosure contending that: (1) the AAR and the withheld portions of the JAG Report are exempt from disclosure under 5 U.S.C., section 552(b)(5), which provides that the Act does not apply to "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency"; (2) any witness' statement given to the Accident Investigation Board (which prepares the AAR) is within 5 U.S.C., section 552(b)(4) (exempting trade secrets and commercial or financial information obtained from a person and privileged or confidential), or section 552(b)(6) (exempting personnel, medical and similar files, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy), and therefore not subject to disclosure; and finally, (3) even if the AAR is not within any of the statutory exemptions, this Court, sitting as a court of equity, should refuse to order disclosure since any beneficial effects of such action are outweighed by the concomitant injury to the public interest in improving air safety.[6] The matter is now before this Court on plaintiff's motion for summary judgment; defendant agrees that there is no genuine issue of fact.

The Freedom of Information Act is divided into three subsections: the first sets out the categories of mate-

---

3. *See* 32 C.F.R. § 701.1(k).

4. On August 23, 1972, plaintiff was provided with a 16mm. film showing the tail of the aircraft during the final minutes of flight.

5. Pub.L. No. 89–487, 80 Stat. 250 (1966). Pub.L. No. 89–487 was repealed, but its substantive provisions enacted into the United States Code by Pub.L. No. 90–23, 81 Stat. 54 (1967) (codified at 5 U.S.C. § 552). Plaintiff relies upon § 552(a)(3):

"[E]ach agency, on request for identifiable records . . . shall make the records promptly available to any person. On complaint, the district court of the United States in the dis-

trict in which the complainant resides . . . has jurisdiction to enjoin the agency from withholding agency records . . . ."

6. Defendant in its answer to the complaint also asserted that the JAG Report material withheld was not subject to disclosure by reason of 5 U.S.C. § 552(b) (7) which exempts from mandatory disclosure matters that are "investigatory files compiled for law enforcement purposes except to the extent available by law to a party other than an agency." However, at oral argument and in its brief defendant did not rely upon that exemption, and this Court will treat that defense as abandoned.

rial which must be disclosed;[7] the second carves out various exemptions and limitations to such disclosure;[8] and the third reiterates the proposition that the Act does not authorize withholding information except as specifically stated.[9] Therefore, disclosure is now the general rule,[10] unless the material in question comes within the purview of one or more of the nine statutory exemptions; and these exemptions are to be construed narrowly.[11] The Court is to determine the matter de novo and the burden is upon the agency to justify its decision not to disclose the requested information.[12]

■ The defendant challenges the plaintiff's standing to maintain this action. However, the Act's use of the words "any person," in place of the formerly employed phrase "persons properly and directly concerned";[13] the legislative history;[14] and the decisions under the Act[15] warrant the conclusion that the plaintiff is a proper party to maintain this action. Moreover, this plaintiff speaks on behalf of a client seeking information with respect to a contemplated lawsuit. At this juncture it is plaintiff's law firm which must evaluate the available information in order to determine whether the client has a basis for asserting a claim against negligent individuals or entities, if any.

■ Turning to the merits of the motion, while it is true that there may be instances in which an agency can demonstrate by means of affidavits or oral testimony that the documents sought clearly come within the purview of one or more. of the statutory exemptions,[16] this is not such a case. After considering the briefs, affidavits and other material submitted by the parties, the Court is convinced that a proper determination of the issues presented requires that it inspect all the records denied to the plaintiff.[17] An in camera inspection is

---

7. 5 U.S.C. § 552(a).

8. *Id.* § 552(b).

9. *Id.* § 552(c).

10. The purpose of the Act is concisely stated in S.Rep.No.813, 89th Cong., 1st Sess. 3–4 (1965) [hereafter S.Rep.]:

"'Knowledge will forever govern ignorance, and a people who mean to be their own governors, must arm themselves with the power knowledge gives. A popular government without popular information or the means of acquiring it, is but a prologue to a farce or a tragedy or perhaps both . . .'

"It is the purpose of the present bill . . . to establish a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language and to provide a court procedure by which citizens and the press may obtain information wrongfully withheld. . . ."

11. *See* Soucie v. David, 145 U.S.App.D.C. 144, 448 F.2d 1067, 1080 (1971); Wellford v. Hardin, 444 F.2d 21, 25 (4th Cir. 1971); Pilar v. Steamship Hess Petrol, 55 F.R.D. 159, 162 (D.Md.1972); *cf.* Davis, The Information Act: A Preliminary Analysis, 34 U.Chi.L.Rev. 761, 783 (1967).

12. 5 U.S.C. § 552(a)(3).

13. 5 U.S.C. § 1002(c) (1964).

14. *See* S.Rep., *supra* note 10 at 5–6; H.Rep.No.1497, 89th Cong., 2d Sess. 5–6 (1966).

15. *See, e. g.,* Hawkes v. IRS, 467 F.2d 787, 790 n. 3, 793 n. 6 (6th Cir. 1972); Skolnick v. Parsons, 397 F.2d 523, 525 (7th Cir. 1968); *cf.* Environmental Protection Agency v. Mink, 410 U.S. 73, 79, 86, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973); Bannercraft Clothing Co. v. Renegotiation Bd., 151 U.S.App.D.C. 174, 466 F.2d 345, 352 (1972), cert. granted, 410 U.S. 907, 93 S.Ct. 967, 35 L.Ed.2d 269 (1973); Soucie v. David, 145 U.S.App.D.C. 144, 448 F.2d 1067 (1971); Ackerly v. Ley, 137 U.S.App.D.C. 133, 420 F.2d 1336 (1969) (attorney plaintiff); Frankel v. SEC, 336 F.Supp. 675, 677 n. 5 (S.D.N.Y. 1971), rev'd on other grounds, 460 F.2d 813 (2d Cir.), cert. denied, 409 U.S. 889, 93 S.Ct. 125, 34 L.Ed.2d 146 (1972).

16. *See* Environmental Protection Agency v. Mink, 410 U.S. 73, 93, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973).

17. *See* Soucie v. David, 145 U.S.App.D.C. 144, 448 F.2d 1067, 1079 (1971); Grumman Aircraft Eng'r Corp. v. Renegotiation Bd., 138 U.S.App.D.C. 147, 425 F.2d 578, 582 (1970); Bristol-Myers Co. v. FTC, 138 U.S.App.D.C. 22, 424 F.2d 935, cert. denied, 400 U.S. 824, 91 S.Ct. 46, 27 L.Ed.2d 52 (1970); *see also* Boeing Airplane Co. v. Coggeshall, 108 U.S.App.

a proper and practical method of determining what portions of the AAR and JAG Report are justifiably exempt from disclosure and whether there are instances where, as defendant claims, disclosable material is so inextricably intertwined with privileged matter that those portions must be entirely exempted from disclosure.[18]

Accordingly, the Court directs that within thirty days the Department of the Navy submit to the Court for in camera inspection the entire AAR and the withheld portions of the JAG Report.

In the meantime, decision on the motion for summary judgment is held in abeyance.

D.C. 106, 280 F.2d 654, 662 (1960). This is not a case where it is claimed that the materials sought contain military secrets, and therefore should not be subject to in camera inspection. *See* United States v. Reynolds, 345 U.S. 1, 10, 73 S.Ct. 528, 97 L.Ed. 727 (1953).

18. *See* Mink v. Environmental Protection Agency, 150 U.S.App.D.C. 233, 464 F.2d 742, 746 (1971), rev'd on other grounds, 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973); Soucie v. David, 145 U.S.App. D.C. 144, 448 F.2d 1067, 1078 (1971); Long v. United States IRS, 349 F.Supp. 871, 874 (W.D.Wash.1972).