David C. Boehm, J.
For some time, local municipal authorities have permitted contractors performing municipal construction work to purchase interest bearing municipal bonds in lieu of the 10% retainages required by law. Recently, a good many of such transactions were handled by a local bond *871 brokerage house, Paul R. Dean & Co. Inc. For some reason not fully explained or understood, the municipalities permitted Paul R. Dean & Co. Inc., after purchase, to retain these bonds in its custody.
The financial demise several years ago of this brokerage firm led to civil and criminal reverberations which are still echoing in the courts. Indeed, as a County Court Judge, I presided at two of the criminal trials brought against the Paul R. Dean & Co. Inc. and Paul R. Dean, individually, as a result of the mysterious disappearance of these bonds.
A number of civil lawsuits are presently pending involving contractors, banks and municipalities arising out of the loss of substantial amounts of money or the bonds purchased with such retainage funds, and this article 78 proceeding is associated with one such lawsuit, "The City of Rochester vs. Chemical Bank of New York State and Great Lakes Dredge and Dock and Dunbar and Sullivan Company et al”. One of the defendants, Great Lakes Dredge and Dock and Dunbar and Sullivan Company, doing business as Great Lakes Dunbar Rochester (hereafter GLDR), is represented by a law firm of which the petitioner, Patrick T. Burke, is either a member or an associate.
This proceeding seeks to annul the determination of the respondent, Tanya Yudelson, as Records Access Officer of the City of Rochester, denying permission to the petitioner to inspect and copy certain municipal records on the ground that they are exempt from disclosure under both article 31 of the CPLR and the New York Freedom of Information Law (Public Officers Law, art 6 [L 1974, chs 578, 579, 580, eff Sept. 1, 1974]).
Because of the association with the criminal trials in which the brokerage house and its president were defendants, the question of disqualification was submitted to counsel. They requested this not be done. Since neither the brokerage house nor its former president is a party to this litigation and is involved in this proceeding peripherally at best, counsels’ stipulation was accepted and the court did not recuse itself.
The pertinent train of events began on January 22, 1975 when the petitioner sent a letter to respondent requesting access to certain documents pursuant to the New York Freedom of Information Law. There were six separate requests, but this proceeding involves only those numbered "2” and "4”.
Number "2” involved a request for copies, at petitioner’s *872 expense, of "all internal or external audits or factual tabulations made by or on behalf of Rochester with respect to municipal contract No. 208-69 (Comptroller’s No. 10309) [the contract between the City of Rochester and GLDR forming the basis of the lawsuit].”
Number "4” of petitioner’s request sought copies of "any records, letters, memoranda, documents and writings of any sort with respect to Paul R. Dean & Co. Inc.”
By letter dated February 13, 1975, respondent admitted the existence of an audit commenting on the city’s previous retainage procedures, but advised that it would not be released because "matters directly related to the City’s previous retain-age procedures are presently under litigation.” The respondent’s letter further advised that letters to or from Dean would not be released either.
It is in this context that this proceeding is brought.
In her answer, the respondent states that, as to petitioner’s request "2”, there are no audits dealing directly or solely with Municipal Contract No. 208-69, but there is at least one audit dealing in part with the practice of substituting bonds in lieu of contract retainages and therefore, since it does not deal specifically with Contract No. 208-69, it is not required to be surrendered. However, the answer goes on to say, even a specific request for this audit would be denied on the ground "that the information sought relates directly to issues which are the subject of litigation between the City of Rochester and GLDR.”
The issue presented is clear and direct: — what effect, if any, does the New York Freedom of Information Law have upon the curtailment of disclosure contained in article 31 of the CPLR and the common-law privilege of a governmental body?
The New York Freedom of Information Law became effective September 1, 1974. Section 85 of the Public Officers Law sets forth the Legislature’s intent as to its purpose, stating in part: "[I]t is incumbent on the state and its localities to extend public accountability wherever and whenever feasible. The people’s right to know the process of government decision-making and the documents and statistics leading to determinations is basic to our society. Access to such information should not be thwarted by shrouding it with the cloak of secrecy or confidentiality.”
Under the definition of "municipality” in subdivision 2 of *873 section 87, the City of Rochester comes within the law’s application. Accordingly, by virtue of this section, it would ordinarily be required to make available for public inspection and copying such things as final opinions, including concurring and dissenting opinions, orders made in the adjudication of cases (§ 88, subd 1, par a); "documents, memoranda, data or other materials constituting statistical or factual tabulations which led to the formulation thereof’ (§ 88, subd 1, par b); and "internal or external audits and statistical or factual tabulations made by or for the agency” (§ 88, subd 1, par d).
The law further requires each agency or municipality, on request for "identifiable records” made in accordance with the published rules, to make the records "promptly available to any persons "(§ 88, subd 6).
The only restrictions imposed by the law as to the public’s access to public records are set forth in subdivision 7 of section 88. It provides:
"7. Notwithstanding the provisions of subdivision one of this section, this article shall not apply to information that is:
"a. specifically exempted by statute;
"b. confidentially disclosed to an agency and compiled and maintained for the regulation of commercial enterprise, including trade secrets, or for the grant or review of a license to do business and if openly disclosed would permit an unfair advantage to competitors of the subject enterprise, but this exemption shall not apply to records the disclosure or publication of which is directed by other statute; or
"c. if disclosed, an unwarranted invasion of personal privacy, pursuant to the standards of subdivision three of this section.
"d. part of investigatory files compiled for law enforcement purposes.”
The respondent’s position is that the petitioner is not entitled to the information for two reasons. One is that the information requested bears directly upon the litigation in which both parties have an interest, making such information privileged and confidential. The second reason, and the basic thrust of its position, is that those provisions of article 31 of the CPLR which are in conflict with the Freedom of Information Law, act as a bar to the obtaining of information thereunder. Since we are dealing with information sought with respect to pending litigation, the respondent argues, article 31 *874 pre-emptively covers the entire area of such disclosure. It was toward this end that the Legislature made it so comprehensive and provided uniform rules for discovery. It therefore follows that the protections against discovery contained in article 31 (§ 3101) such as privilege, attorneys’ work product, and material prepared for litigation, must exclude the petitioner, who does not come into court as a member of the general public but as counsel for a litigant and is therefore precluded from obtaining protected information even under the broad sweep of the Freedom of Information Law.
The respondent’s argument finds powerful support in Cirale v 80 Pine St. Corp. (35 NY2d 113) wherein the Court of Appeals denied an order for discovery and inspection of information obtained by a special Board of Inquiry following a steam pipe explosion in New York City. In his opinion, Judge Jasen noted that official information in the hands of governmental agencies is privileged in certain contexts as part of a common-law rule of evidence. "Such a privilege attaches to 'confidential communications between public officers, and to public officers, in the performance of their duties, where the public interest requires that such confidential communications or the sources should not be divulged’ [citations]. The hallmark of this privilege is that it is applicable when the public interest would be harmed if material were to lose its cloak of confidentiality.” (35 NY2d, at p 117.)
Since Cirale v 80 Pine St. Corp. was decided July 15, 1974, there would ordinarily be no difficulty in distinguishing it from the present case by reason of its antedating the effective date of the Freedom of Information Law. However, in a perplexing footnote, the court, in dictum criticized by Judge Gabrielli in his dissenting opinion, seemed to go out of its way to say that "Although the Legislature has recently passed the Freedom of Information Law * * * it does not abolish the common-law privilege for official information.” (Id. n 1.)
Notwithstanding what appears to be a rather restrictive interpretation of the Freedom of Information Law, Cirale v 80 Pine St. Corp. may nevertheless be otherwise distinguished. There the Board of Inquiry which conducted the investigation and possessed the sought-for information was a nonparty; but in this case petitioner obviously seeks information in connection with a lawsuit now pending against his client GLDR in which the City of Rochester is a party. Indeed, respondent urges this as the very reason for denying access to the records. *875 But here the City of Rochester is not only a party, it is the plaintiff. Under such circumstances the common-law privilege never did apply. The privilege may not be invoked when the government itself brings suit (Richardson, Evidence [10th ed], § 456, pp 446-447).
Secondly, municipalities do not partake of the State’s sovereign immunities and "disclosure against them is available as it is against any private person with no special rules or privileges.” (Practice Commentary, Siegel, McKinney’s Cons. Laws of NY, Book 7B, CPLR 3102:10, p 269.)
Accordingly, it would seem that as to a municipality, disclosure may be limited or enlarged to the same extent as that of an individual (Rome Urban Renewal Agency v Schneible, 64 Misc 2d 566; Matter of Spiegel v Board of Assessors, 75 Misc 2d 105), and may be extended beyond the discovery permitted by article 31 by appropriate legislation (Matter of Romanchuk v County of Westchester, 42 AD2d 783; Matter of Winston v Mangan, 72 Misc 2d 280).
In both Matter of Romanchuk v County of Westchester (supra) and Matter of Winston v Mangan (supra), decided under former sections 66-a and 66 of the Public Officers Law which permitted a somewhat more limited access to government information, the argument was rejected that such information was prohibited because of the privilege accorded by CPLR article 31. In both cases it was held that the Public Officers Law overrode article 31, and Justice Hartnett said in Matter of Winston that "material collected in the 'ordinary course of business’ in governmental operations, 'including perhaps eventual use in any litigation which may ensue,’ as well might be a follow-up quality study of a major project about which adverse reports had been received, is not shielded from disclosure.” (72 Mise 2d 280, at p 285.) That rule would be applicable to the present case because the material held by the City of Rochester seems to have been compiled as part of a general study rather than for particular litigation.
Finally, Cirale may be distinguished by the failure of the respondent to show that disclosure would be more harmful to the interests of the government than to the interests of the party seeking the information. Its only support for the exercise of any privilege is the bare statement in paragraph "18” of the respondent’s answer that "the information sought relates directly to issues which are the subject of litigation between the City of Rochester and GLDR”, nothing more. But *876 as the Court of Appeals pointed out, there must be specific support for the claim of privilege and this requires the governmental agency to "come forward and show that the public interest would indeed be jeopardized by disclosure of the information.” (35 NY2d, at p 119.) This the respondent has totally failed to do.
Although the dictum of the Court of Appeals in the footnote referred to in Cirale is troublesome, it is possible upon a further review of the scope and purpose of the Freedom of Information Law (Law) in an appropriate case the Court of Appeals may hold that although the common-law privilege as to official information may not be totally abolished, the Law has largely superseded it. Such appears to have been the clear purpose of the Legislature *in enacting it (Marino, The New York Freedom of Information Law, 43 Fordham L Rev 83, Oct., 1974).
State Senator Ralph J. Marino was the Senate sponsor of the Law. His law review article is probably the most complete expression to date of the legislative intent behind its passage. "In many situations” he writes, "the public’s right to access was denied because of determinations that the situation did not come within the 'common law’ right to inspect documents. Thus, whether a record in custody of a public officer was available for public inspection had been held to depend upon the nature of the document or the interest of the individual seeking the information.” (Id., pp 84-85.)
In setting forth the purpose of the law, Senator Marino trenchantly points out: "The adoption of the Freedom of Information Law should indicate to governmental administrators and to the courts that restrictions other than those specifically enumerated are not to be placed on the public’s access to information.” (Id., p 85.)
It is most apparent, therefore, that the Legislature deliberately and purposefully extended the permissible disclosure of governmental proceedings well beyond what it had been before either under the common law or by legislation such as former section 66 of the Public Officers Law or CPLR article 31. Indeed, one court has already pointed this out (Matter of Dillon v Cahn, 79 Misc 2d 300, 303). This public policy is not only set forth in section 85 of the Law, captioned "Legislative intent”, but is again emphasized in subdivision 10 of section 88 which provides that nothing in the Law "shall be construed to limit or abridge any existing right of access at law or in *877 equity of any party to public records kept by any agency or municipality.”
This policy is further reinforced by the Committee on Public Access to Records, created pursuant to section 88 (subd 9, par a) of the Law, which has the statutory duty of advising agencies and municipalities "regarding this article by means of guidelines, advisory opinions, regulations or other means deemed advisable”. This committee has already adopted several advisory resolutions, among them one captioned "Access to Records to Any Person.”
"resolved, That information accessible under the Freedom of Information Law shall be made equally accessible to any person, without regard to status or interest. ” (Advisory Resolution No. 3, 10/31/74, Access to Records to Any Person, Bulletin of State of New York Committee on Public Access to Records; emphasis added.)
In addition, since the New York law was patterned after the Federal Freedom of Information Act (Pub L 90-23; US Code, tit 5, §552) some reliance may also be placed upon the Federal court decisions construing that act. Both the State law and Federal law use the words "any person” with respect to the classification of those persons to whom public records shall be made available (Public Officers Law, § 88, subd 6; US Code, tit 5, § 552, subd [a], par [3]). There is no qualification, standard or status exclusion in either law. The Federal cases have uniformly rejected any "need to know” requirement (Benson v General Servs. Administration, 289 F Supp 590, affd 415 F2d 878; Hawkes v Internal Revenue Serv., 467 F2d 787; Kreindler v Department of Navy of U. S., 363 F Supp 611).
In the Kreindler case, the court referred to the Federal act’s use of the words "any person” and required the Government to disclose the naval aircraft accident report to the plaintiff, an attorney seeking information on behalf of a client for a contemplated lawsuit.
Nor do the exemptions to disclosure provided by subdivision 7 of section 88 previously quoted apply here. The reason given by respondent for refusing access to the information requested is not one of the limited exemptions. That information "specifically exempted by statute” referred to in paragraph a of subdivision 7 of section 88 does not contemplate the exemptions of CPLR article 31. Rather, it refers to such information as income tax and juvenile and youthful offender proceedings *878 (Marino, The New York Freedom of Information Law, 43 Fordham L Rev 83, 90, n 42, supra).
Furthermore, in accordance with the rule that disclosure laws be liberally construed (Kenford Co. v County of Erie, 41 AD2d 586; Butterman v Macy & Co., 33 AD2d 746, affd 28 NY2d 722), it would seem to be incumbent upon any governmental agency resisting disclosure under the broad provisions of the Freedom of Information Law to show that such information is exempt. This would be in compliance with the burden which the Court of Appeals imposed in Cirale v 80 Pine St. Corp. (35 NY2d 113, 118-119, supra), and which the Federal law specifically imposes (US Code, tit 5, § 552, subd [a], par [3]). The respondent has also failed to meet that burden.
The petitioner, having exhausted his administrative remedies, is properly before the court in an article 78 proceeding and I am satisfied that the information he seeks is sufficiently identifiable as to meet the requirements of the Public Officers Law. It is not necessary that the party requesting the information identify it down to the last detail. The language of the Law places part of such responsibility upon the public agency from whom the information is sought. "The responsibility of the person requesting the records is that he provide sufficient information to permit the agency to accomplish this duty.” (National Cable Tel. Assn. v Federal Communications Comm., 479 F2d 183, 190.)
Accordingly, petitioner is entitled to and may have access to the information sought and to make appropriate arrangements for obtaining copies thereof at his expense.
The fact that there have already been article 31 discovery proceedings in connection with the pending lawsuit does not preclude petitioner from obtaining the relief sought here. However, since the requested information is no doubt sought for the purposes of such litigation, the parties may find it advisable to proceed with further article 31 proceedings. Matters relating to specific documents, data and information should be settled through the discovery process as much as possible (see, e.g., National Cable Tel. Assn. v Federal Communications Comm., 479 F2d 183, supra). However, the right of the petitioner to the information is not made dependent thereupon.
Judgment is granted to the petitioner.