■ In the Matter of ROBERT S. FINK, Respondent, v LOUIS J. LEFKOWITZ, as Attorney-General of the State of New York, Appellant.—Judgment, Supreme Court, New York County, entered September 23, 1977, granting petition to require delivery to petitioner for copying and inspection of a copy of the office manual of the Special State Prosecutor for Nursing Homes, Health and Social Services, unanimously modified, on the law, without costs and without disbursements, to the extent of excluding from the manual to be delivered chapter 5 and certain parts of chapter 4, and the equivalent material in the revised manual, and otherwise affirmed. Petitioner, an attorney for several nursing homes, applied pursuant to article 78 for a judgment requiring delivery to him of a photocopy of appellant's office manual for inspection and copying. Following an *in camera* inspection of the document, the court at Special Term granted the petition. In its opinion, the

court described the manual as divided into five chapters, the first three of which are not in issue on this appeal. The fifth chapter is a comprehensive detailed report of a complete nursing home investigation by the appellant with fictitious names substituted in an apparent effort to conceal the subject of the investigation. Chapter 4, as accurately described in the opinion at Special Term, "is a guide to auditing and investigation. It charts the sources of information, the table of organization, the procedure to be followed, and the methods to be employed, and what to look for and whom to interview in the audit and investigation of a case to its ultimate disposition. It includes also abstracts of laws, definitions of crimes, instructions as to the use and availability of process, reports and records, decisions of Court of Appeals, instructions on trial preparation and procedure including presentation before grand juries." When the proceeding was decided at Special Term, the New York Freedom of Information Law (Public Officers Law, §§ 84 *et seq.)* provided that each agency should make available for public inspection and copying, *inter alia,* "administrative staff manuals and instructions to staff that affect members of the public" (§ 88, subd 2, par [g]) subject to certain exceptions, one of which was information part of investigatory files "compiled for law enforcement purposes" (§ 87, subd 2, par [e]). Noting that the New York Freedom of Information Law, in general, and these sections in particular, were patterned on the Federal Freedom of Information Act (US Code, tit 5, § 552, subd [a], par [2], cl [C]) as worded prior to certain amendments enacted in 1974, the court appropriately looked to Federal appellate interpretations of the comparable language. It was correctly concluded that in the leading Federal cases confronting an issue similar to that presented, disclosure had been directed. (See *Hawkes v Internal Revenue Serv.,* 467 F2d 787, and 507 F2d 481; *Stokes v Brennan,* 476 F2d 699.) Finding nothing in the manual that concerned a particular investigation, and determining that most of that which appeared was a matter of common knowledge to those in any enterprise affected with a public interest, the court at Special Term held that the claimed exemption had not been made out. Following the decision at Special Term, and while the appeal was pending, there occurred two developments that significantly alter the nature of the issue presented. First, appellant has voluntarily made available to petitioner all of the manual in question except for chapter 5 and portions of chapter 4. Appellant has also made available all new material in a revised manual with the exception of two pages. Second, effective January 1, 1978, the New York Freedom of Information Law was substantially revised, and part of the revision affects the power of public agencies to withhold information compiled for law enforcement purposes. Section 87 (subd 2, par [e]) now authorizes an agency to deny access to records or portions thereof that: "are compiled for law enforcement purposes and which, if disclosed, would: i. interfere with law enforcement investigations or judicial proceedings; * * * iv. reveal criminal investigative techniques or proceedures, except routine techniques and procedures". The issue thus is whether the still undisclosed portions of the manual were compiled "for law enforcement purposes" and if disclosed would either "interfere with law enforcement investigations" or "reveal criminal investigative techniques or procedures, except routine techniques and procedures". This amendment quite clearly was patterned on and closely follows an amendment to the Federal Freedom of Information Act that had been enacted in 1974. (See US Code, tit 5, § 552, subd [b], par [7].) From the legislative history it is apparent that the primary purpose of the 1974 amendments to the Federal law was to overcome certain Federal court decisions that were thought to be too restrictive in permitting the

release of information of a law enforcement character. (See Senate Report No. 93-1200, 93 Cong 2d Sess [1974].) Although liberalized disclosure was the over-all purpose, it may well be that the description of the standard to be applied with regard to disclosure of "investigative techniques and procedures" (US Code, tit 5, § 552, subd [b], par [7], cl [E]) supports in that limited area a more restrictive interpretation. Thus the Senate Report explains that investigative techniques and procedures "should not be interpreted to include routine techniques and procedures already well known to the public such as ballistic tests, fingerprinting, and other scientific tests or commonly known techniques." Turning to chapter 5 of the manual, it is immediately apparent that this detailed and comprehensive reconstruction of a full nursing home investigation by appellant, intended as an instruction model for the staff, presents the full panoply of techniques and approaches that had been developed by appellant in the course of its experience. While none of these techniques are unfamiliar to people experienced in law enforcement, their detailed application to the special area of appellant's work of investigation excludes them in our view from the category of "routine techniques and procedures." Moreover, we are of the view that their disclosure to subjects of investigation are more likely to assist wrongdoers to evade the law than to give guidance to those concerned to conform their practices to the requirements of law. The same considerations apply to some though not all of the portions of chapter 4 whose disclosure is still resisted by appellant. Accordingly, the order and judgment below are modified to the extent of excluding from disclosure chapter 5 in its entirety and the following pages of chapter 4: 6 through 9; the previously deleted part of page 11; 13 through 30; 37 through 63; 125 through 170; the previously deleted portions of 178 and 179; and 208 through 217. The only new pages in the revised manual not disclosed by the appellant, and not covered by the foregoing, do not come within the exemption and should be disclosed. Settle order on notice. Concur—Lupiano, J. P., Silverman, Evans, Lane and Sandler, JJ.