OPINION OF THE COURT
Eli Wager, J.
In this CPLR article 78 proceeding, the respondent Commissioner of the Suffolk County Department of Health Services moves to dismiss the petition for failure to state facts sufficient to entitle the petitioner to the relief requested. No answer has yet been served.
The petitioner is the owner and operator of an adult home in Patchogue who seeks to compel the respondent to furnish him a full copy of a written complaint made against the facility, including the name of the complainant. It appears that a complaint was made to the respondent alleging that the petitioner was raising, butchering and serving to the residents unlabeled poultry in violation of the Public Health Law and that an agent of the respondent who investigated the complaint found no evidence of any violations. Petitioner’s subsequent effort to obtain the name of the complainant was denied by the department of health services, although petitioner was furnished a copy of the complaint minus the complainant’s name. The determination was affirmed on administrative appeal upon the ground that the identity of the complainant was exempt from disclosure as an unwarranted invasion of personal privacy *390 under the Freedom of Information Law (Public Officers Law, § 89, subd 2, par [b]). On this motion to dismiss the petition which seeks to have that determination annulled, the respondent argues that the information is exempt from disclosure as a matter of law.
Section 87 (subd 2, par [b]) of the Public Officers Law provides that an agency may deny access to records or portions thereof which if disclosed would constitute an unwarranted invasion of personal privacy under the provisions of subdivision 2 of section 89.
Subdivision 2 of section 89 of the Public Officers Law provides in pertinent part as follows:
“2. (a) The committee on public access to records may promulgate guidelines regarding deletion of identifying details or witholding of records otherwise available under this article to prevent unwarranted invasions of personal privacy. In the absence of such guidelines, an agency may delete identifying details when it makes records available.
“(b) An unwarranted invasion of personal privacy includes, but shall not be limited to: * * *
“iv. disclosure of information of a personal nature when disclosure would result in economic or personal hardship to the subject party and such information is not relevant to thq work of the agency requesting or maintaining it; or
“v. disclosure of information of a personal nature reported in confidence to an agency and not relevant to the ordinary work of such agency.”
Thus, the statute requires a twofold showing by the agency opposing disclosure on privacy grounds under either clause iv or v. Although respondent has cited both clauses in his motion papers, it is not alleged that the information withheld was “reported in confidence” and respondent’s arguments appear to be predicated solely upon clause iv.
The respondent relies upon advisory opinions contained in copies of letters from Robert J. Freeman, Executive Director of the Committee on Public Access to Records, annexed to respondent’s moving papers, to the effect that the substance of a complaint is “relevant to the work of the agency” in receipt of a complaint but that the identity of *391 the complainant is not. Respondent also urges that disclosure of the identity of the complainant would “result in economic or personal hardship to the subject party”, since the petitioner has stated that he sought disclosure “so I could prosecute for false accusations, malice and harassment”. Respondent also asserts a public policy argument in support of nondisclosure: to wit, that “a vast source of assistance to those public officials charged with enforcing all the state and local laws, codes and regulations would disappear” if the identity of complainants, informers or witnesses were routinely available to the general public.
“Since the Committee on Public Access of Records is the administrative agency charged with oversight of the Freedom of Information Law (§ 88, subd 9), its interpretation of the statute, if not irrational or unreasonable, should be upheld (see Matter of Howard v Wyman, 29 NY2d 434, 438) ” (Matter of Sheehan v City of Binghamton, 59 AD2d 808, 809). Even though the committee’s executive director in his opinion letters cited a case which does not appear to be on point since it involved a criminal investigation (Church of Scientology of N. Y. v State of New York, 61 AD2d 942, affd 46 NY2d 906), his interpretation of the statute as exempting names of complainants from disclosure on the ground that the substance of complaints but not the names of complainants is “relevant to the work of the agency” (Public Officers Law, § 89, subd 2, par [b], cl iv) is not irrational or unreasonable (cf. Matter of Gannett Co. v County of Monroe, 59 AD2d 309; Matter of New York Teachers Pension Assn. v Teachers’ Retirement System of City of N. Y., 11 AD2d 250), and thus the respondent’s determination not to disclose on this ground will not be disturbed.
The respondent’s determination with respect to the second test required by clause iv of the statute — that “disclosure would result in economic or personal hardship to the subject party” — is predicated on the status and interest of the petitioner as a potential plaintiff in an action against the unidentified complainant, a test which is at variance with the recommendations of the Committee on Public Access to Records.
*392 The committee has opted not to issue guidelines with respect to deletions on privacy grounds as provided by the statute, but has instead published a discussion of the issues (in its first annual report to the Governor and the Legislature on the Freedom of Information Law dated December 15, 1978). In the cited report, the committee concluded in pertinent part that the standard for determining what constitutes an unwarranted invasion of personal privacy should be that of “the reasonable man of ordinary sensibilities” and that neither the interest nor the character of the seeker of records should generally be considered in granting or denying a request for records (first annual report, p 12). The committee’s discussion includes the following: “Perhaps the best way to balance access and privacy lies in the traditional judicial standard of the ‘reasonable man.’ This basis would enable both agencies and the courts to decide whether information made public would be ‘offensive and objectionable to a reasonable man of ordinary sensibilities’ [Prosser, Handbook on the Law of Torts, 811 (4th ed. 1971)]. The customs, mores, or ordinary views of the community have been used as references in this determination (citation omitted). This approach under the Law may avoid potential inequities, such as discriminatory treatment among applicants for records. Moreover, under the reasonable man standard, neither a court nor an agency would be required to undertake a detailed analysis of the applicant’s motives, the manner in which the disclosed information will be utilized, or the public’s specific interest in the proposed use. If only the magnitude of the invasion of privacy is considered, an agency or court can more readily accomplish the goal of preventing harm to the individual” (emphasis supplied).
The committee’s conclusions are in accord with an advisory resolution published by it in 1974 (Advisory Resolution No. 3, Oct. 31, 1974, Access to Records to Any Person, Bulletin of State of New York Committee on Public Access to Records) which reads as follows: “resolved, that information accessible under the Freedom of Information Law shall be made equally accessible to any person without regard to status or interest.”
Although some courts have sustained nondisclosure where, *393 as here, the petitioner seeks information for use in possible litigation which would not be available under CPLR article 31 (see Arzuaga v New York City Tr. Auth., 73 AD2d 518), other courts have adopted a construction of the statute similar to that of the committee, holding that the petitioner’s status as a litigant is irrelevant and that disclosure under the statute is not limited by what is available under the common law or the CPLR (see, e.g., Matter of Burke v Yudelson, 81 Misc 2d 870, affd 51 AD2d 673).
Thus, interest and status of the instant petitioner and the manner in which the disclosed information will be used by him would appear to be an improper standard by which to determine “economic or personal hardship” as the phrase is used in section 89 (subd 2, par [b], cl iv) of the Freedom of Information Law (Public Officers Law, art 6).
Respondent’s final attempt to justify nondisclosure is the public policy argument that disclosure of the identity of complainants, informers and witnesses would hamper the work of public officials charged with enforcing State and local laws, codes and regulations. The statute of course provides protection for information reported “in confidence” as long as the information is not relevant to the ordinary work of the agency (Public Officers Law, § 89, subd 2, par [b], cl v; § 87, subd 2, par [e], cl iii, protects the identity of a “confidential source” of information relating to a criminal investigation). Thus, where confidentiality is important to a complainant or informer or witness, a promise of confidentiality by an agency will be honored and disclosure of identity denied, a procedure which should ensure the availability of such assistance.
But the'statute clearly does not provide for nondisclosure of the identity of a complainant in a noncriminal matter where confidentiality was not promised (Public Officers Law, § 89, subd 2, par [b], cl v) unless the two-tiered standard of clause iv is met. Thus, the suggestion implicit in respondent’s argument that the identity of such complainants can never be disclosed is patently erroneous. Instead, clause iv and the construction given it by the committee require case-by-case determinations on the issue of “economic or personal hardship” based upon the “reasonable man standard”.
*394 Relief on a motion to dismiss the petition in a CPLR article 78 proceeding before an answer has been served (CPLR 7804, subd [f]) is not available where issues of fact are presented (Matter of Cutcher v Nyquist, 39 AD2d 810). Application of the reasonable man test clearly involves such issues.
Respondent shall serve and file an answer within 20 days after service of the order to be entered hereon with notice of entry.