OPINION OF THE COURT
Felice K. Shea, J.
This CPLR article 78 proceeding, brought to review the denial of a request made under the Freedom of Information Law (Public Officers Law art 6 [FOIL]), presents the question of whether tape recordings made in the course of a criminal investigation should be disclosed to a newspaper for use in defense of a libel action. Petitioner, The Journal Publishing Company, owns the Albuquerque Journal, a newspaper published and circulated in New Mexico. Respondent is the Special Prosecutor charged with investigating corruption in the New York City criminal justice system.
On March 11, 1985, petitioner made a FOIL request pursuant to Public Officers Law § 87 (2) and § 89 (3) asking the Special Prosecutor for 37 tape recordings. Respondent granted access to portions of the tapes sought but denied the remainder of the request. Pursuant to Public Officers Law § 89 (4) (a), petitioner brought an administrative appeal. Respondent, citing statutory exemptions, affirmed the denial on the grounds that:
"(a) The records and statements requested were compiled for law enforcement purposes and if disclosed would (1) interfere with law enforcement investigations; (2) identify confidential sources and disclose confidential information relating to a criminal investigation; and (3) reveal criminal investigative techniques or procedures (P.O.L. § 87 (2) (e) (i) (iii) and (iv)); and
"(b) The records and statements requested are specifically exempted from disclosure by state or federal statutes (P.O.L. § 87 (2) (d));
"(c) The records and statements, if disclosed would constitute an unwarranted invasion of personal privacy under the provision of Section eighty-nine of this article (P.O.L. § 87 (2) (0).”
The present application followed.
The tape recordings sought by petitioner were made in 1974 and 1975 by Ralph Grano, a Deputy Warden at the Tombs in New York City, in the course of an undercover investigation. The conversations recorded were with James Vincent Napoli, Sr., allegedly a high-ranking organized crime figure, and others associated with him. The Department of Investigation, which supervised the investigation, does not resist disclosure and has furnished petitioner with 82 of the tapes made by *419 Grano. The remaining tapes (37 according to petitioner, 39 according to respondent) are in the possession of the Special Prosecutor.
The libel suit against petitioner was brought by Bob Stover, former Chief of Police in Albuquerque. The alleged libel is a 1982 newspaper article published by the Albuquerque Journal in which Jerome Sternlieb[1] is reported as saying that he was sent to Albuquerque in late 1976 or early 1977 by Napoli to familiarize himself with Napoli’s business affairs in New Mexico so that Sternlieb might return later to oversee them. According to Sternlieb, Napoli had secret partnership interests with Jerry Apodaca, then Governor of New Mexico, and William Marchiondo, an Albuquerque attorney. Sternlieb claimed in the Journal article that Chief of Police Stover drove him around Albuquerque and pointed out Napoli’s hidden business interests.
Petitioner submits that there is relevant evidence in the Grano tapes supporting the truth of Sternlieb’s statements. Petitioner’s attorney asserts that on December 18, 1984 he spoke with Ralph Grano and Grano recalled that Napoli or one of his associates stated in substance that Napoli "owns the Governor, the Chief of Police and the Attorney General in New Mexico” and that the tapes will show business dealings between Napoli, Marchiondo and former Governor Apodaca. Respondent does not dispute petitioner’s claim that the undisclosed tapes corroborate Sternlieb’s statements.
In Public Officers Law § 84 (FOIL), the Legislature set forth its intention to allow maximum access to information, finding that: "[A] free society is maintained when government is responsive and responsible to the public, and when the public is aware of governmental actions * * * [I]t is incumbent upon the state * * * to extend public accountability wherever and whenever feasible * * * Access to * * * information should not be thwarted by shrouding it with the cloak of secrecy or confidentiality”. In furtherance of this legislative purpose, "[p]ublic disclosure laws are liberally construed to allow maximum access to documents. Statutory exemptions are narrowly construed” (Matter of Miracle Mile Assoc. v Yudelson, 68 AD2d 176, 181, lv denied 48 NY2d 706). The burden of demonstrating that material requested under FOIL is exempt rests upon a government agency asserting the exemption (Public Officers Law § 89 [4] [b]; Matter of Westchester Rockland Newspapers v Kimball, 50 NY2d 575, 580; Hawkins v Kurlander, 98 AD2d 14, 15, appeal withdrawn 62 NY2d 804) *420 and an agency "is required to articulate particularized and specific justification” to avoid disclosure. (Matter of Fink v Lefkowitz, 47 NY2d 567, 571.)
The Freedom of Information Law makes government records presumptively available to the public without regard to the status, need, good faith or purpose of the applicant. (Matter of Scott, Sardano & Pomeranz v Records Access Officer, 65 NY2d 294, 296; Matter of Farbman & Sons v New York City Health & Hosps. Corp., 62 NY2d 75, 80.) A general public interest in disclosure need not be demonstrated and access to government records in aid of litigation, both against the government and against other individuals, frequently has been directed by the courts. (See, e.g., Dowling v State of New York, 49 AD2d 982; Matter of Bloomberg v Hennessy, 99 Misc 2d 958; Matter of Dwyer, 85 Misc 2d 104; see also, Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3101:25, 1986 Pocket Part, p 28.) FOIL was enacted to give the public a right to documents explaining the bases of governmental decision making (Public Officers Law § 84), but the records made available by statute need not have been used in the decision-making process. (Matter of Farbman & Sons v New York City Health & Hosps. Corp., supra, at p 80; Matter of Westchester Rockland Newspapers v Kimball, 50 NY2d 575, 581, supra.) In short, FOIL gives a sweeping right to public records and only narrow grounds for resisting disclosure.
In opposition to the present application, the Special Prosecutor does not contend pursuant to Public Officers Law § 87 (2) (e) (i), (iii), and (iv) that disclosure would interfere with law enforcement investigations, or that disclosure would reveal confidential sources and investigative techniques. He has apparently abandoned these bases for objection given to petitioner at the administrative level.
Respondent divides the 39 tapes in his possession into three categories. The first category contains 10 tapes (including 2 not on petitioner’s list of 37) which were used in People v "John Doe” & "Richard Roe”,[2] a trial that resulted in acquittal of both defendants. The court file and all tapes were sealed pursuant to a court order dated December 12, 1979, although the order did not mention the disputed 10 tapes. The Special Prosecutor argues that the 10 tapes in the first category are *421 exempt from disclosure under Public Officers Law § 87 (2) (a) (FOIL)[3] because they were sealed pursuant to CPL 160.50 (1) (c), a State statute which mandates sealing of all official records and papers upon termination of a criminal action by acquittal. Petitioner’s position is that the 10 tapes used at the "Doe” and "Roe” trial are not exempt from disclosure because the order sealing the records of the trial is silent with regard to the tapes.
CPL 160.50 (1) (c) mandates the sealing of "all official records and papers * * * relating to the arrest or prosecution * * * on file with * * * any court, police agency, or prosecutor’s office”. The Court of Appeals in Matter of Dondi (63 NY2d 331, 337-338) characterized this provision as "broad and inclusive” and interpreted it to include "a tape recording that was integral to both appellant’s arrest and his prosecution.” To the extent that Matter of Hynes v Karassik (63 AD2d 597, affd 47 NY2d 659) and Matter of Anonymous (95 AD2d 763) are to the contrary, they are no longer good law. The 10 tapes used at trial of "John Doe” and "Richard Roe” are thus subject to the sealing order.
CPL 160.50 was enacted to protect an accused person from the adverse effects of an arrest record when the ultimate result of criminal charges is exoneration. (Matter of Anonymous, 95 AD2d 763, supra; Ciraulo v Dillon, 108 Misc 2d 751; Governor’s memorandum, 1976 NY Legis Ann, at 408.) The statute makes sealed records available only to the accused and, in limited circumstances, to enumerated public law enforcement agencies. The statute does not contemplate unsealing for a purpose unrelated to the accused individual. Accordingly, there is no statutory authority permitting disclosure of sealed records to petitioner herein.
No court appears to have addressed the authority of a court to unseal the records of a trial in order to give access to a FOIL applicant. There may be an inherent power in the court to unseal when the interests of justice so require, and upon a demonstration of necessity. (Matter of State Commn. on Judicial Conduct, 108 Misc 2d 801; see also, discussion in Matter of Dondi, 63 NY2d 331, 338, supra; Matter of Hynes v Karassik, 47 NY2d 659, 664-665, and at p 665 [Jones, J., concurring], supra; People v Joseph W. F., 111 Misc 2d 752.) Here, no attempt was made to give notice to "John Doe” or "Richard *422 Roe” of this request to unseal the records of their criminal trial. The issue of whether and in what circumstances the court’s discretion to unseal should be exercised was not addressed by either party. Moreover, unsealing may not be necessary in view of the court’s disposition, infra, of petitioner’s request for disclosure of the tapes that have not been sealed.
The tapes in the Special Prosecutor’s second and third categories were turned over to respondent by the Department of Investigation for possible use at the trials of Napoli and of "Doe” and "Roe” but were not admitted into evidence at either trial. The second category contains 16 tapes, of which the portions published during the trial of Napoli have been released to petitioner. The third category consists of 13 tapes of which no parts were used at either trial.
Unlike the 10 tapes that were sealed, the remaining tapes withheld from petitioner do not fall under the exemption in Public Officers Law §87 (2) (a) (FOIL). Respondent argues, however, that the tapes in all three categories are exempt from disclosure under Public Officers Law § 87 (2) (b), a provision permitting a government agency to withhold records that "if disclosed would constitute an unwarranted invasion of personal privacy” under Public Officers Law § 89 (2). Public Officers Law § 89 (2) (b) gives examples of five categories of information protected from public access because of privacy considerations. Respondent does not claim that the taped conversations sought fit in any category listed, but relies instead on the general language of the statute.
The exemptions in FOIL are patterned on the Federal Freedom of Information Act (US Code, tit 5, § 552 et seq. [FOIA]) and it is therefore appropriate to look for guidance to Federal appellate interpretations of comparable language. (See, Matter of Fink v Lefkowitz, 63 AD2d 569, mod on other grounds 47 NY2d 567, supra; Matter of Schwartz, 130 Misc 2d 786 [Sur Ct, Nassau County].)
In Department of Air Force v Rose (425 US 352, 372-373) the Supreme Court, quoting from legislative history, construed the privacy exemption in FOIA to require that a balance be sought between " 'the protection of an individual’s right of privacy and the preservation of the public’s right to Government information’ ”, or a weighing "of the private and public interests” (See also, Greentree v United States Customs Serv., 674 F2d 74, 80; Washington Post Co. v United States Dept. of *423 Health & Human Servs., 690 F2d 252, 260; Wine Hobby USA v United States Internal Revenue Serv., 502 F2d 133, 136 ["use of term 'unwarranted’ * * * compels a balancing of interests”]).
Some New York courts have adopted a similar balancing test when privacy considerations are raised under Public Officers Law § 89 (2) (b) (FOIL). (See, e.g., Matter of Goodstein v Shaw, 119 Misc 2d 400; Matter of Bahlman v Brier, 119 Misc 2d 110; Matter of United Fedn. of Teachers v New York City Health & Hosps. Corp., 104 Misc 2d 623, 625.)
Other New York authorities have formulated the test in different language. In Matter of MacHacek v Harris (106 Misc 2d 388, 392), the court cited a report of the Committee on Public Access of Records (now called Committee on Open Government)[4] and concluded that the standard for determining what constitutes an unwarranted invasion of personal privacy should be that of "the reasonable man of ordinary sensibilities”. In Matter of Kwitny v McGuire (102 Misc 2d 124, affd 77 AD2d 839, affd 53 NY2d 968) the trial court considered, as one factor, whether the subjects of the records sought had a reasonable expectation of privacy. In many cases, the concern of the courts has been with shielding names and addresses from public scrutiny when no need has been shown for specific identifying information. (See, e.g., Matter of Krauss v Nassau Community Coll., 122 Misc 2d 218, 220; Matter of Goodstein v Shaw, 119 Misc 2d 400, supra; Matter of Bahlman v Brier, 119 Misc 2d 110, supra; Matter of Nicholas, 117 Misc 2d 630.)
The cases relied on by respondent have no application to the facts at bar. In Goodstein (supra) an attorney was denied disclosure of the first names and addresses of individuals who had filed complaints with the State Division of Human Rights where the petitioner sought to use the names of complainants to solicit potential clients. In Bahlman (supra) a city agency provided a report on sick leave utilization by its employees in contemplation of collective bargaining negotiations, but was permitted to delete the names of individual employees. In both cases, the court found no proper purpose would be served by revealing the identity of individuals and that the withheld information was exempt under FOIL for reasons apart from the privacy exemption.
*424 In contrast, the tapes here contain information divulged to an undercover law enforcement officer by incarcerated criminals. The plaintiff in the libel suit, Stover, is a former public official and so are others whose names petitioner has reason to believe will be mentioned. Public officials have a narrower right and expectation of privacy than average citizens. (James v Gannett Co., 40 NY2d 415, 421-423; Gilberg v Goffi, 21 AD2d 517, affd 15 NY2d 1023.)
Moreover, petitioner has already been provided with 82 of the Grano tapes, and, in addition, Grano’s testimony at two public trials revealed much of the content of the remaining tapes. To the extent that confidentiality has been breached, it should not provide a basis for exemption.
Respondent, who knows the content of the tapes, cites no facts detailing how disclosure of the material sought would be unduly intrusive. Conclusory allegations are insufficient to meet the government’s burden of proof. (Church of Scientology v State of New York, 46 NY2d 906, 907-908; Matter of Hopkins v City of Buffalo, 107 AD2d 1028.)
Looking to the petitioner’s side of the ledger, it is clear that the tapes could be relevant to its defense of Stover’s libel action. A reference to Stover on the tapes would tend to undercut the claim of libel. Evidence on the tapes corroborating Sternlieb’s statements might show the reasonableness of the Albuquerque Journal’s reliance on Sternlieb in order to rebut Stover’s claim that the newspaper acted with malice or reckless disregard of the truth. (See, New York Times Co. v Sullivan, 376 US 254, 279-280.)
Petitioner has no source other than the tapes in issue from which to obtain the needed evidence. The tapes already received by petitioner allegedly contain some information helpful to petitioner, but none refers to former Police Chief Stover. Grano’s recollection of Napoli’s statements has dimmed with the passage of time. Napoli asserted his US Constitution 5th Amendment privilege at a deposition and can be expected to resist giving testimony at trial. Stover, in his lawsuit, denies any connection with Napoli. Nor does there appear to be another procedure by which petitioner can secure the tapes it seeks for use as evidence. The laws of New Mexico do not authorize the service of subpoenas duces tecum outside the State. (NM Rules Civ Pro rule 45; see, 81 Am Jur 2d, Witnesses, § 14.)
Public policy favors allowing newspapers access to court *425 records. (In re Search Warrant for Second Floor Bedroom, 489 F Supp 207, 209.) "[A] vigorous and free press, acting on the basis of the maximum access to governmental information, serves as a constant check on the excesses, mistakes and wrongdoing of all branches of government.” (Providence Journal Co. v Federal Bur. of Investigation, 460 F Supp 762, 777, revd on other grounds 602 F2d 1010; see, Nixon v Warner Communications, 435 US 589, 597-599; see also, Cox Broadcasting Corp. v Cohn, 420 US 469, 491-493.) There is a public interest in making available to a newspaper evidence it has reason to believe will vindicate its right to publish a story concerning the conduct of public officials.
In sum, a balancing of the right to know with the right of individuals to be protected from intrusion into their personal lives leads to the conclusion that disclosure, if restricted and supervised, will not be an unwarranted intrusion under the circumstances at bar.
The tapes are to be used only insofar as they are relevant to the libel action pending against petitioner. To insure that the privacy rights of individuals are protected, the tapes are to be sent to the New Mexico court to be utilized under supervision of the Judge presiding at the libel trial. Petitioner is to deliver to respondent blank cassettes in a number and of a type suitable for transcribing the unsealed tapes in respondent’s possession.
The petition is granted to the extent that respondent shall supply copies of the unsealed tapes requested. That branch of the application seeking disclosure of the 10 sealed tapes is denied with leave to renew upon notice to "John Doe” and "Richard Roe” and upon an appropriate showing.

. In 1982 Jerome Sternlieb was in the Witness Protection Program of the United States Department of Justice.

. Names disguised to protect the identity of defendants whose court records have been sealed.

. Public Officers Law § 87 (2) (a) provides that an "agency may deny access to records or portions thereof that * * * are specifically exempted from disclosure by state or federal statute”.

. The Committee is the administrative agency charged with oversight of FOIL. (Public Officers Law § 89 [1].)