Samuel A. Spiegel, J.
This is an application to permit petitioner, or his representative, to inspect certain records of the Fire Department of the City of New York.
While in the employ of the New York Telephone Company on March 30, 1975 petitioner was injured in a flash fire explosion as he was entering the underground telephone system on Madison Street, New York City. The Fire Department made an investigation of the cause of the fire which resulted in a report (Administrative Code of City of New York, §§ 488[2]-1.0, 488[2]-2.0, 488[2]-3.0). However, when petitioner, by his representative, attempted to obtain a copy of these records, specifically the "Chiefs Report”, he could not do so without signing an affirmation that a notice of claim was not filed, that one would not be filed, and that a cause of action was not and would not be brought against the City of New York. The effect thereof was to deny petitioner a privilege afforded any other person. In opposition, the argument presented by the city is that petitioner is seeking to determine if there is a cause of action against the city which it asserts cannot be done.
The law with respect to the discovery and inspection of public records has been expanded to conform with the more liberal trend and the Federal Freedom of Information Act (US Code, tit 5, § 552; Public Officers Law, art 6 [Freedom of Information Law]). Formerly the State statute only related to the police reports (Public Officers Law, § 66-a) and records in public office where secrecy is not required (Public Officers Law, § 66). Even under these more restrictive statutes the intent was to make the public information available whether or not the information led to prosecution (Matter of New York Post Corp. v Leibowitz, 2 NY2d 677; Matter of Werfel v Fitzgerald, 23 AD2d 306; Alberghini v Tizes, 68 Misc 2d 587) and unless the records were confidential (Matter of Cherkis v Impelliteri, 307 NY 132).
The Freedom of Information Law does not abolish the prior and common-law privilege for official information (Cirale v 80 Pine St. Corp., 35 NY2d 113, 117) but the use of the privilege *106 requires more than a mere assertion thereof. It requires a determination of the public interest (supra, pp 118-119). While the Court of Appeals, therein, refused to permit the discovery from a nonparty witness of the records, information and witnesses before the board of inquiry, with respect to the explosion at 80 Pine Street on May 3, 1972, it did so on the basis that plaintiff failed to meet the discovery requirements of the CPLR of "adequate special circumstances” (supra, p 117; CPLR 3101 (subd [a], par [4]). Herein, the issue is one of acquisition of a public record.
Pursuant to section 88 (subd 1, par a) of the Public Officers Law the report in question is discoverable. However, although the city does not dispute the availability of that report in general circumstances, it states that the adversary nature of the proceeding and the possibility of litigation allegedly prevents the discovery. Those factors are not effective. Even under the prior law a police accident report could not be withheld if the State, municipal corporation or subdivision thereof were involved in the accident (Public Officers Law, § 66-a). By the freedom laws (State statutes which are similar to our Freedom of Information Law and also called Sunshine Laws) accident reports (Moore-McCormack Lines v ITO Corp. of Baltimore, 508 F2d 945; Machin v Zuckert, 316 F2d 336, cert, den 375 US 896, app after remand 336 F2d 914), autopsy reports (Denver Pub Co. v Dreyfus, 520 P2d 104 [Col]), and written appraisal reports (Gannett Co. v Goldtrap, 302 S2d 174 [Fla]) are discoverable.
Basically the intent throughout these, and the other cases relating to other types of information, is that the public obtain any and all information a private litigant could obtain (EPA v Mink, 410 US 73; Anchorage Bldg. Trades Council v Department of Housing & Urban Development, 384 F Supp 1236) without consideration of interests (Nixon v Sampson, 389 F Supp 107). Moreover, the liberal disclosure policy necessitates a strict construction of the exemptions (Bristol-Myers Co. v Federal Trade Comm., 424 F2d 935).
In a democracy, the more light shed upon the operations of officials and Government agencies results in greater efficiency and public confidence. Where darkness prevails there is greater opportunity for mistrust, misfeasance, malfeasance or nonfeasance.
The shattering events of recent times on the national scene have made clear the repercussions upon a Government or a *107 public official who seeks to cover up, evade or prevent information from reaching the public. These events created divisiveness and scars to our society which can only be healed by assuring to the public full access to all information which will not threaten our national security. When the public is denied access to such information, a natural suspicion surfaces and a climate of mistrust and confusion reigns.
The public has a right to know — a right not to learn by mere sufferance, accident or censorship. That right is equally involved whether the information sought relates to criminal activities or the causes of a fire as in the present case.
The greater the freedom of information the better protection is afforded to the public. The more freedom of information — the more confidence in our Government will be warranted. Censored information exists only in a totalitarian country which fears dissemination of truth. Free access to information must always remain one of the firm pillars of our society.
Thus, the "Chiefs Report” about the fire is discoverable. It is a public document required to be made by statute (Administrative Code, §§ 488[2]-1.0, 488[2]-2.0, 488[2]-3.0) and is within the purview of the Freedom of Information Law.
Accordingly, the application is granted.