OPINION OF THE COURT
Leonard Silverman, J.
The above actions against the State both lie primarily in false arrest and false imprisonment and are based upon the alleged acts of one Michael Hanahoe, a parole officer employed by the New York State Department of Correctional Services, who was responsible for the arrests.
As part of their discovery proceedings, and in preparation for trial, the claimants, by their attorneys, submitted to this court a series of subpoenas duces tecum seeking, inter alia, the personnel records of Michael Hanahoe, including records of arrests made by him, records of complaints made against him, records of weapons licensed or issued to him, his incident report, and Grand Jury minutes made in connection with the complaint against the claimants.
Because of the nature of the documents and information sought, the court deferred the signing of the subpoenas in order to give the defendant an opportunity to comment *974 thereon and to voice any opposition thereto. The State has obliged vociferously.
The prime area of dispute is the necessity of disclosing the personnel records of Mr. Hanahoe kept by the Department of Probation. It is the State’s position that such records are privileged under common and statutory law and pursuant to the "public interest” privilege enunciated in People v Keating (286 App Div 150, 152-153; Fischer v Citizens Committee, 72 Misc 2d 595).
Mr. Justice Breitel, then writing for the Appellate Division, First Department, held, in Keating (supra, pp 152-153) that "[t]his privilege attaches to confidential communications between public officers, and to public officers, in the performance of their duties, where the public interest requires that such confidential communications or the sources should not be divulged.” Because the information included in Officer Hanahoe’s personnel folder includes, to a substantial degree, confidential disclosures or complaints made regarding him, investigative reports and records of possible reprimands from other officials, it is the contention of the State that these records are privileged and need not be disclosed.
The defendant also contends that such records are exempt from disclosure under the Freedom of Information Law (Public Officers Law, art 6) in that such records "constitute an unwarranted invasion of personal privacy”. (Public Officers Law, § 87, subd 2, par [b].)
Claimants, citing the Freedom of Information Law to rebut the public interest privilege, rely on the fairly recent decision of Walker v City of New York (90 Misc 2d 565).
That case, like the cases at bar, involved an attempt by a plaintiff to demonstrate that an officer, in that case a police officer, had evinced propensities to actions similar to those complained of. Mr. Justice Finz, in a scholarly opinion, held (p 567) the objections of the city, similar to those voiced by the State, to be "founded upon rules long since discarded”.
Notwithstanding our opinion that, in view of the provisions of section 50-a of the Civil Rights Law, which refers specifically to the personnel records of police officers, the reliance of the court in Walker on the Freedom of Information Law was misplaced, we do, however, find ourselves in agreement with the principles therein enunciated as they might apply to the facts at bar.
*975 As Mr. Justice Finz observed (p 566), "[t]he approach to the question of access by the public to records heretofore considered to be confidential and unavailable for inspection has undergone a radical change.” We might add that since that statement was made, the approach has changed even more drastically with the repeal of the old and re-enactment of a new Freedom of Information Law.
The new Freedom of Information Law, which became effective on January 1, 1978, instead of authorizing access to certain enumerated classes of records, permits access to all governmental records other than those specifically exempted. Because of the very recent effective date of the statute, judicial interpretation or discussion is as yet unavailable.
We have however been able to review, in seeking guidance, the recommendations elicited from and the interpretations made by, the various governmental agencies consulted with reference to the enactment of this bill (S 16-A; thereafter L 1977, ch 933). We have specifically reviewed the recommendations of the Departments of State Police, Probation, and others most likely to be confronted with issues such as those presented at bar. We noted, with interest, that although the Division of Probation recommended approval of the bill, the Superintendent of Police registered his qualified disapproval based in part on the fact that that bill would require the disclosure of records such as those sought at bar. Notwithstanding that interpretive opinion of the Superintendent of Police, the bill was enacted.
It is the opinion of this court that the personnel records of Michael Hanahoe are, except as limited hereinafter, subject to examination pursuant to the broadened provisions of the Freedom of Information Act.
A few words about the "personal privacy” exception relied upon by the defendant may be in order at this time.
Section 87 (subd 2, par [b]) of the Public Officers Law exempts from disclosure records or portions of records which, "if disclosed would constitute an unwarranted invasion of personal privacy under the provisions of subdivision two of section eighty-nine of this article”.
The relevant portion of subdivision 2 of section 89, which defines "[a]n unwarranted invasion of personal privacy” is clause (i) of paragraph (b) which exempts "disclosure of em *976 ployment, medical or credit histories or personal references of applicants for employment”.
Since the documents sought do not refer to "applicants for employment” but rather to complaints and incidents which may have occurred during employment by the Parole Department, we do not believe that they are exempted by the statute.
"This conclusion is further reinforced by the general rule that public disclosure laws are to be liberally construed (Cuneo v Schlesinger, 484 F2d 1086, cert den sub nom Rosen v Vaughn, 415 US 977; Matter of Burke v Yudelson, 81 Misc 2d 870) and that statutory exemption from disclosure must be narrowly construed to allow maximum access (Vaughn v Rosen, 484 F2d 820, cert den 415 US 977; see Public Officers Law, § 85).” Matter of Zuckerman v New York State Bd. of Parole, 53 AD2d 405, 407-408.)
That decision, written before the further liberalization of the Freedom of Information Law, has particular application to requests for information under the ever-expanding doctrine of the "public’s right to know”.
We turn now to the question as to whether the documents sought are exempt from disclosure as "compiled for law enforcement purposes”, disclosure of which would either "interfere with law enforcement investigations” or have a chilling effect on an investigation by identifying "a confidential source or disclose confidential information relating to a criminal investigation”. (Public Officers Law, § 87, subd 2, par [e], els [i], [in].) Notwithstanding defendant’s bald and conclusory asseverations that this would in fact be the case, we note a very definite distinction between the applicability of that exemption on a regular basis to parole officers as opposed to police officers.
In Farrell v Village Bd. of Trustees of Vil. of Johnson City (83 Misc 2d 125, 128), a case decided under the prior Freedom of Information Law but before the enactment of section 50-a of the Civil Rights Law, the court, acknowledging on the basis of People v Keating (286 App Div 150, supra) and Cirale v 80 Pine St. Corp. (35 NY2d 113), that "[i]t may be that the Freedom of Information Law has not abolished the common-law privilege for official information”, nevertheless held that personnel records containing written reprimands of three police officers were subject to disclosure. "Disclosure of the written reprimands will not harm the overall public interest.” *977 (Farrell v Village Bd. of Trustees of Vil. of Johnson City, supra, p 128.)
Disclosure of the personnel records of police officers has repeatedly been held to be available to defendants in criminal actions. "Thus, for instance, upon a criminal trial the court has power to compel disclosure of matter admissible in evidence, relevant to the innocence of the defendant, and not countervailed by a superior public interest (People v. Walsh, supra; People ex rel. Lemon v. Supreme Court, supra; Roviaro v. United States, 353 U.S. 53, 59-62).” (Matter of Langert v Tenney, 5 AD2d 586, 589.)
Cases allowing disclosure of police personnel records include People v Vasquez (49 AD2d 590), People v Sumpter (75 Misc 2d 55), People v Lugo (93 Misc 2d 195), contra People v Torres (77 Misc 2d 13).
It is the opinion of this court that the liberal doctrine enunciated in those decisions with reference to personnel records cannot and should not be limited to criminal matters. As the court said in authorizing disclosure of a fire report, "The public has a right to know — a right not to learn by mere sufferance, accident or censorship. That right is equally involved whether the information sought relates to criminal activities or the causes of a fire as in the present case.” (Matter of Dwyer, 85 Misc 2d 104, 107.)
Undoubtedly as a result of the rash of cases authorizing or seeking discovery of police personnel records (People v Lugo, supra), the Legislature recently enacted section 50-a of the Civil Rights Law which sets forth a clear procedure for disclosure of the records including a hearing as to materiality and relevance. Although that section is specifically limited to police officers and would, by definition, exclude parole officers’ records, we note that the statute makes no distinction between criminal and civil proceedings.
Where malfeasance of a public officer is an issue — and the necessary confidentiality of criminal investigation will not be impaired thereby or national security threatened — maximum freedom of information must be provided — whether the proceeding is criminal or civil. "Where darkness prevails there is greater opportunity for mistrust, misfeasance, malfeasance or nonfeasance.” (Matter of Dwyer, supra, p 106.)
In reviewing the Police Misconduct Litigation Manual, recently published by the National Lawyers Guild, George Bedrosian, the past president of the Michigan Trial Lawyers *978 Association, writing for the May, 1978 issue of Trial magazine, stated (p 52): "Those of us who lived through the urban uprisings of the middle sixties and the current pattern of police abuse in some cities know that the unrest expressed in fires and killings in our cities 10 years ago will certainly be repeated unless our society finds an approach to the intractable problem of police abuse.”
Without concurring that the problem is intractable — indeed, we feel that our public officers have been much maligned in recent years — we hold that the more liberal disclosure of personnel records of peace officers will make them more responsive to the public they serve by reducing the opportunities for misfeasance or malfeasance referred to in Dwyer (supra).
For the foregoing reasons we have this day "So Ordered” the subpoena duces tecum directing the production of the personnel records of Officer Hanahoe. In so doing, we expressly exclude from the necessity of production, any matters specifically relating to ongoing criminal investigation. Although Mr. Hanahoe is not a police officer and it is, accordingly, highly improbable that such confidential information is included in his personnel file (notwithstanding defendant’s conclusory allegations to the contrary), we hereby direct that any such information be first submitted to the Trial Judge for in camera inspection as to confidentiality or privilege.
The application for a judicial subpoena duces tecum directing production of the Grand Jury minutes with respect to the charges against claimants, is denied. This court has no jurisdiction over those proceedings and hence cannot order their disclosure. "[O]nly the court in charge of the Grand Jury is authorized to release the statements from the secrecy requirement of CPL 190.25 (subd 4). (See Matter of Wolf v Berman, 40 AD2d 869; Matter of Gold v Quinones, 37 AD2d 618.)” (Matter of People v Quigley, 59 AD2d 825, 826.)