INMATES OF UNIT 14; Victor Bayron, et al., Plaintiffs,

v.

Correction Officers Sherman J. REBIDEAU, et al., Defendants.

No. 77–CV–147.

United States District Court, N.D. New York.

May 4, 1984.

Prisoners' Legal Services of, N.Y., New York City, for plaintiffs; John A. Gresham, New York City, Winifred De Palma, Plattsburgh, N.Y., of counsel.

Robert Abrams, Atty. Gen. of the State of N.Y., Albany, N.Y., for defendants; David B. Roberts, Asst. Atty. Gen., Scott S. Oakley, Staff Atty., Albany, N.Y., of counsel.

Rowley, Forrest & O'Donnell, P.C., Albany, N.Y., for N.Y. State Inspection Security & Law Enforcement Employees District Council 82, Intervenor-amicus curiae; Mark T. Walsh, Jr., Albany, N.Y., of counsel.

### MEMORANDUM–DECISION and ORDER

JAMES T. FOLEY, District Judge.

The original sixteen state prisoner plaintiffs in this action were granted leave to proceed in forma pauperis in its prosecution by order of District Judge Edmund Port of this Court filed May 9, 1977. Pursuant to such order, service of the summons and complaint was to be made upon the named defendants without payment of fees. As it is to be expected, it took considerable time to effect service upon the original thirty-three named defendants. Thereafter, my first contact with the case was my endorsement of August 8, 1977 upon an order to show cause submitted by defendants that directed depositions of the defendant correction officers to be taken at the Clinton Correctional Facility. By order filed November 21, 1977, Judge Port granted a motion of plaintiffs to file a supplemental complaint and for class certification insofar as injunctive relief is sought, and denied without prejudice a cross-motion of defendants for separate trials. Demand for jury trial was timely filed.

The docket sheet entries of activity in the action are very numerous and indicate continuous discovery mainly by the plaintiffs that continue to this day. Many interrogatories have been served by both sides and plaintiffs have requested, now up to the eighth request, many documents to be produced for inspection and copying. Answers to the interrogatories and objections to the production of documents were filed in several instances. Assistant Attorney General Roberts states that thousands of pages of documents have been furnished to the attorneys for the plaintiffs. There have been changes both in the personnel of the Prisoners' Legal Services and in the office of the Attorney General since the commencement of the action that slowed preparation of the case for trial. Assistant Attorney General Roberts expressed dismay in the several pretrial conferences I have held since September 1983, and in his written submissions on motions about the prolonged time period that has elapsed since the action was commenced. I share that dismay, but in my experience the delay in processing state prisoner cases for trial, particularly ones with substance, seems un-

avoidable, and in my judgment is caused by the fact we deal with a closed and confined part of our society. *See Akili v. Ward,* 547 F.Supp. 729 (N.D.N.Y.1982); *Collins v. United States v. Foreman,* et al. 729 F.2d 108, (2d Cir.1984).

Unfortunate incidents have happened in the discovery procedures. It was disclosed at a pretrial conference I held in September 1983, in an attempt to move the case to trial, that many tape recorded depositions of defendants taken in 1977 were never transcribed and substantial portions of them might be unintelligible. At the conference, I permitted depositions of other correction personnel to be taken, and such were held during the week of January 3 through January 6, 1984. By letter dated March 8, 1984 to the plaintiffs' attorneys, with copy to the Clerk of the Court, Assistant Attorney General Roberts states that the transcript of the depositions taken by a court reporter are incomplete, fragmented and utterly incomprehensible and not subject to correction. It appears from the letter that the original depositions will not be signed by the deponents and as stated therein, a motion will be forthcoming from the defendants to suppress the depositions pursuant to Fed.R.Civ.P. 32(d)(4). I have no knowledge which side is at fault, but it is incomprehensible to me that lawyers cannot make proper arrangement for satisfactory deposition taking. Further delay in reaching a trial date will occur, undoubtedly, from this unfortunate incident.

After the September 1983 pretrial conference, I held several lengthy ones in February and March 1984. Throughout the conferences held, Assistant Attorney General Roberts persists in urging reconsideration of my ruling that the action should be tried to a jury in one trial in its entirety, and not by separate trials for the seven individual claims of the plaintiffs now remaining, and for the pervasive pattern and practice claims alleged against the defendants who act in a supervisory capacity. His argument is that a joint trial will be prejudicial to the interests of the defendants, and more importantly, due to the numerous plaintiffs and defendants such a trial will be unmanageable. The contention, of course, is not frivolous, but in my judgment, such a trial, although admittedly difficult, will be manageable, as shown by the satisfactory jury trial of a case with similar issues and numerous parties. *See Redding v. Fairman,* 717 F.2d 1105 (7th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1282, 79 L.Ed.2d 685 (1984). Judicial economy and the interests of justice will be best served by one trial. If we are to have seven or eight separate trials, it seems certain several of the actions will be pending in the 1990's. The common sense attitude is to accept the fact that under prevailing law, the case has to be tried to a jury, and sincere and cooperative preparation efforts are necessary by both sides to reach that trial day as soon as possible. Convicted prisoners do not forfeit all constitutional protection by reason of their conviction and confinement in prison. *Bell v. Wolfish,* 441 U.S. 520, 545, 99 S.Ct. 1861, 1877, 60 L.Ed.2d 447 (1979). There is no iron curtain drawn between the Constitution and the prisons of this country. *Wolff v. McDonnell,* 418 U.S. 539, 555–56, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974).

The voluminous complaint in this action brought pursuant to 42 U.S.C. § 1983 alleges that in the years 1976 and 1977, the inmates of Special Housing Unit 14, at Clinton Correctional Facility, were subjected to a pervasive pattern and practice of unlawful assault, intimidation and harassment. The relief sought is to enjoin the defendant correction officers from employment or assignment in Unit 14, and for compensatory and punitive damage for each of the individual plaintiffs. The individual claims describe in detail with specific dates and places the alleged assaults and harassment by certain correction officers, with others named as participating in the assaults, observing their occurrence, and failing to protect the particular plaintiff or intercede in his behalf. *Putman v. Gerloff,* 639 F.2d 415, 423 (8th Cir.1981). Unit 14 is a housing block with forty-eight (48) cells in which inmates are kept in segregated or solitary confinement, separate from the

general population. The confinement in the cell is usually around the clock with one hour for outside the cell exercise. The confinement follows administrative proceedings and determinations and is imposed for disciplinary purposes. Unit 14 was called the "Box" by the inmates, and my experience with its staffing, physical make-up, and living condition problems has been extensive. *See Wright v. McMann,* 321 F.Supp. 127 (N.D.N.Y.1970); *aff'd in part, rev'd in part and remanded,* 460 F.2d 126 (2d Cir.1972); *cert. denied,* 409 U.S. 885, 93 S.Ct. 115, 34 L.Ed.2d 141 (1972); *Ray v. Rockefeller,* 352 F.Supp. 750 (N.D.N.Y. 1973); *Frazier v. Ward,* 426 F.Supp. 1354 (N.D.N.Y.1977).

The details from the beginning of this memorandum to this point have been stated so there will be available a ready reference in written form summarizing the lengthy background history and procedural processing of the action. At hand now for determination is a motion by plaintiffs to compel the production of documents specified in items 2 and 8 of plaintiffs' Eighth Request for such production. Fed.R.Civ.P. 37. There is opposition to both items, orally and in writing, by Assistant Attorney General Roberts, but it is stronger in regard to item 8—the production of the personnel files of the Correction Officers who remain as defendants against whom individual claims of assault and harassment are alleged. Staff Attorney Scott S. Oakley appeared and represented the Department of Correctional Services at the February and March 1984 conferences, and was heard on the record in opposition to disclosure of the documents requested. Attorney Mark T. Walsh, Jr., representing District Council 82, the certified bargaining representative and agent for New York State Correction Officers, filed a motion to intervene as amicus curiae to express its strong interest to maintain the confidentiality of the personnel records of the defendant correction officers sought by plaintiffs in item 8. At the March 5, 1984 conference, the motion to intervene was granted in Chambers on the record after oral argument.

Item 2 of the Eighth Request requests production of all budget proposals requesting funds for the improvement and operation of the present Unit 14 videotape monitoring system, or requiring funds for the installation and operation of a different, new I assume, videotape monitoring system for Unit 14. The attorneys for the plaintiffs are aware from their own inspection and information furnished to them by Assistant Attorney General Roberts that the present monitoring system is in need of replacement or repair because the videotapes are of poor quality for demonstration purposes. It has been said that the monitoring system in Unit 14 was installed at my direction in 1979, but my recollection is that it was only a suggestion made at one of the trials or conferences involving Unit 14. In any event, hindsight proves the value of such videotape surveillance, particularly in a Special Housing Unit, inasmuch as complaints from Unit 14 thereafter lessened to some extent in this court. Incidents that involved claimed use of excessive force in Unit 14 could now be seen on videotapes and aid accurate appraisal of the truth of the situation and existing circumstances. *See United States v. Pageau,* 526 F.Supp. 1221 (N.D.N.Y.1981).

At the March 5, 1984 conference, Assistant Attorney General Roberts produced for my in camera inspection the documents about the funding and system problems, asserting executive privilege to several. He then marked "Executive Privilege Asserted—David Roberts" on the August 11, 1982 letter from E.S. LeFevre, Superintendent to Deputy Commissioner Wm. Gard—Re: SHU # 14 Video Monitoring System; also similarly marked is a Memorandum from Deputy Commissioner Gard to Superintendent LeFevre, dated August 20, 1982; a letter from Superintendent LeFevre to Assistant Deputy Commissioner Michael Tersigni, dated April 20, 1982; and a letter of December 13, 1982 from Superintendent LeFevre to Deputy Commissioner Gard, all about the Unit 14, Video Surveillance System.

■ From my review of the three letters, their attachments, and one memorandum to which executive privilege is claimed, it is my judgment that such privilege is sustainable, under legal precedents, only to the letter of August 11, 1982 from Superintendent LeFevre to Deputy Commissioner Gard. The considerations to be weighed in the evaluation of a documentary executive privilege are outlined clearly with citation of pertinent case law by Chief Judge Munson in *Mobil Oil Corp. v. Department of Energy*, 520 F.Supp. 414, 416–417 (N.D.N.Y.1981). In applying these considerations and principles, in my judgment, the executive privilege asserted cannot be upheld as to the attachments to the August 11, 1982 letter, or to the memorandum, and the other two letters and their attachments. Their content from my reading is factual, stating actual incidents occurring in Unit 14 and problems with the surveillance system. It is difficult for me to accord important executive confidence or privilege to these communications complaining about a problem already known to plaintiffs' attorneys for which funds are sought to repair or replace. It seems to me the correction officials are entitled to credit for their concern to improve the situation. I see no harm that will come to government decisionmaking in the state prison system from disclosure. Therefore, copies of all the disputed documents, except the August 11, 1982 letter, shall be furnished by Assistant Attorney General Roberts to the attorneys for the plaintiffs, and shall be unsealed by the Clerk for that purpose.

The serious discovery dispute, in my opinion, is the request under F.R.Crim.P. 34 to inspect and copy the personnel files of the defendant Correction Officers maintained throughout their employment in the regular course of business. *See* 28 U.S.C. § 1732. In his response, Assistant Attorney General Roberts made a detailed objection to such request, and the present motion of the plaintiffs is to compel such production under F.R.Civ.P. 37(a)(2). The issue has been vigorously argued and briefed by both sides including the substan-tial amicus curiae brief in support of the objections to discovery of such files.

The first and foremost part of the objection is that the personnel files of the defendant Correction Officers are privileged and confidential under Section 50–a of the New York Civil Rights Law, and their content should not be disclosed under this State statute to the attorneys for the plaintiffs in this federal lawsuit under 42 U.S.C. § 1983 for alleged deprivation of constitutional rights. The position of the plaintiffs' attorneys in regard to such statute is that by its terms and legislative history, this statute, enacted initially by Chapter 413 of the Laws of 1976, covered police officers only. It is contended that the statute when amended by Ch. 778 of the Laws of 1981, such amendment by its terms and legislative history related to local correction officers only and not state correction officers of the State Department of Correctional Services as are the defendants here. At the March 5, 1984 conference, my ruling on the record was in my judgment and from my review that the question was substantial and close, and should be left for the State courts to decide. Whether statutory language should control, or resort to legislative history to determine legislative intent is necessary, can become a complex question. *See Allen v. State Board of Elections*, 393 U.S. 544, 570, 89 S.Ct. 817, 834, 22 L.Ed.2d 1 (1969); *Harrison v. Northern Trust Co.*, 317 U.S. 476, 479, 63 S.Ct. 361, 362, 87 L.Ed. 407 (1943). Learned Hand says: "There is no surer way to misread any document than to read it literally ..." *Guiseppi v. Walling*, 144 F.2d 608, 624 (2d Cir.1944, L. Hand concurring opinion), *aff'd sub nom. Gemsco, Inc. v. Walling*, 324 U.S. 244, 65 S.Ct. 605, 89 L.Ed. 921 (1945). It has been well said that needless decisions of state law should be avoided as a matter of comity, and to allow a surer-footed reading of state law. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Therefore, I shall assume for purposes of this decision only that the defendant State Correction Officers are within the terms of

Section 50-a of the New York Civil Rights Law.

In accord with the specific provisions of Section 50-a(3) of this Civil Rights Law, and the policy and procedure recommended in *Kerr v. United States District Court, N.D. California,* 426 U.S. 394, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976), my decision on the record was to review the personnel files in camera. In *Kerr,* pp. 405–406, 96 S.Ct. p. 2125, plaintiffs therein also being state prisoners, Justice Marshall stated it would seem in camera review of documents is relatively costless and an eminently worthwhile method to insure that balance is correctly struck between claims of irrelevance and privilege and the asserted need for documents, and as a highly appropriate and useful means of dealing with claims of governmental privilege. Accordingly, twenty-one files of the defendant Correction Officers were delivered to my Chambers in a carton for the burdensome task of in camera review. A summary sheet of most of the documents enclosed in each file was prepared by Assistant Attorney General Roberts and is attached outside each file. His description, comments and evaluation of the documents are made upon each summary sheet. In the summary sheets, practically every official record of the individual defendants are characterized as irrelevant to the issues of this case, or privileged as private and personal. These summaries are appreciated as a good faith effort to lessen the burden. In order for me to be even handed in the review, I have read through the summaries and also through the substantial records in each of the twenty-one files. The records in each file in most instances are of a similar pattern: Personal Data Sheet, Performance Evaluation and Rating forms, Employee Status Change and Transfer Request forms, Payroll Records, Workmen's Compensation forms for injuries sustained in employment, Medical history and treatment forms, and in several instances miscellaneous official memoranda relating to personal or official problems of individual correction officers.

█ It is conceded, as it must be, that this state statute, N.Y. Civil Rights Law 50-a, cannot be considered as decisive or absolute in consideration of the privilege invoked in a federal constitutional tort action, of this kind, but the attorneys for the defendants urge that it is entitled to serious consideration and important recognition. *See* F.R.Evid. 501; *Lewis v. United States,* 517 F.2d 236, 237 (9th Cir.1975); *Lora v. Board of Education,* 74 F.R.D. 565, 576 (E.D.N.Y.1977); *United States v. King,* 73 F.R.D. 103, 105 (E.D.N.Y.1976). By enacting F.R.Evid. 501, Congress manifested an affirmative intention not to freeze the law of privilege. *Trammel v. United States,* 445 U.S. 40, 47, 100 S.Ct. 906, 910, 63 L.Ed.2d 186 (1980). State evidentiary privileges should be accepted unless there is an overriding federal policy which would be undermined by deference to the particular state privilege claimed or if it would be manifestly inequitable from the facts to uphold it; the determination is to be made by applying an interest balancing test. Kaminsky, *State Evidentiary Privileges in Federal Civil Litigation,* 43 Fordham L.Rev., 923, 947, 962 (1975).

█ Under F.R.Civ.P. 26(b)(1), discovery may be had regarding any matter relevant to the subject matter involved in the action. This provision is an explicit recognition that the question of relevancy is to be more loosely construed at the discovery stage than at the trial. 8 Wright & Miller, *Federal Practice and Procedure;* Civil Section 2008. Admissibility at the trial is not the limit of discovery and discovery may be properly had of inadmissible matter. *Id.* p. 48, 100 S.Ct. p. 911. Discovery may be had not merely for providing evidence at the trial, but also for discovery of evidence, indeed for leads as to where evidence may be located. *Engl v. Aetna Life Ins. Co.,* 139 F.2d 469 (2d Cir. 1943, Clark, C.J.). Determination that certain information is discoverable does not constitute a ruling on its admissibility. *Uitts v. General Motors Corp.,* 58 F.R.D. 450, 452, 453 (D.C.Pa.1977); *Goodman v. Scully,* 81–CV–2400 (S.D.N.Y., Sweet, D.J., March 19, 1982). Federal Rule of Civil

Procedure 26(b) has been generally construed to provide a great deal of latitude for discovery. *Harris v. Nelson*, 394 U.S. 286, 297, 89 S.Ct. 1082, 1089, 22 L.Ed.2d 281 (1969); *Hickman v. Taylor*, 329 U.S. 495, 507, 67 S.Ct. 385, 391, 91 L.Ed. 451 (1947).

█ Federal policy favors broad discovery in civil rights actions. *Kinoy v. Mitchell*, 67 F.R.D. 1, 12 (S.D.N.Y.1975). It has been strongly stated that suits under 42 U.S.C. § 1983 should be resolved by a determination of the truth rather than a determination that the truth shall remain hidden. *Wood v. Breier*, 54 F.R.D. 7, 11 (E.D.Wis.1972). A most important factor to be considered in the determination as to whether particular evidence should be discovered is the importance of the evidence to the plaintiffs' case. *Crawford v. Dominic*, 469 F.Supp. 260, 263 (E.D.Pa.1979); *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D.Pa.1973); both actions are under 42 U.S.C. § 1983. Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. *Hickman v. Taylor, supra,* 329 U.S. at p. 507, 67 S.Ct. at p. 391. A Freedom of Information Act exemption, an analogy urged in the amicus curiae memorandum of law, does not automatically constitute a "privilege" within the meaning of the Federal Rules of Civil Procedure. *Baldrige v. Shapiro*, 455 U.S. 345, 360 n. 14, 102 S.Ct. 1103, 1112 n. 14, 71 L.Ed.2d 199 (1982).

█ The complaint alleges a pervasive pattern and practice of unlawful assault, intimidation and harassment that at this stage under prevailing law must be accepted as true. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). To prove such an allegation, a supervisor's conduct must amount to deliberate indifference or tacit authorization of the offensive acts, or inadequate training or supervision amounting to deliberate indifference or gross negligence on the part of the officials in charge. *See Turpin v. Mailet*, 619 F.2d 196, 201 (2d Cir.1980), *cert. denied*, 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980); *Owens v. Haas*, 601 F.2d 1242, 1246–47 (2d Cir.1979), *cert. denied*, 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979); *see also Batista v. Rodriguez*, 702 F.2d 393 (2d Cir.1983); *Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir.1973), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). Discovery of supervisory evaluations is extremely important in the need to support pattern and practice allegations. *Crawford v. Dominic, supra,* p. 265.

█ This formidable array of legal guides and principles, in my judgment, unquestionably compels the determination that the plaintiffs are entitled to discovery of the personnel files of the defendant Correction officers. Similarly, as decided in *United States v. King, supra,* 73 F.R.D. at 109, the balance of relevant factors clearly falls on the side of compelled disclosure, and particularly to protect the important interest to afford adequate opportunity to prepare for the proper and full presentation of evidence in a constitutional deprivation action under 42 U.S.C. § 1983. The federal interest cannot be interfered with by a state statute or policy. It is important to note that in an inmate action under 42 U.S.C. § 1983 charging brutality during confinement in the Nassau County Correctional Center, before the amendment of 50–a by Chapter 778 of the Laws of 1981, then District Judge George C. Pratt (now Second Circuit Judge), by order dated September 30, 1980, directed that plaintiffs' attorneys should have access to the personnel files of fourteen of the employees of the Center, including nine corrections officers. (*Cavese v. County of Nassau, et al.,* 79 C 1256, E.D.N.Y.; Attorney Gresham, Supplemental Affidavit in support of discovery motion, Ex. C.). The access was apparently to the entire files without any restrictions and without in camera review by the court.

In this instance, I am now and always have been conscious from the beginning of

my experience that in the maximum security prisons a tense relationship often exists between inmates and correction officers. Internal security of a maximum security prison is paramount and great care is necessary so as not to endanger the welfare of the correction officers or their families. *Pell v. Procunier*, 417 U.S. 817, 823, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974). My conclusion after review of each file and after careful deliberation is that the contents of each file, with the exception of the payroll records, are subject to discovery. However, in any record where so present, the home addresses of the correction officers are to be deleted, and also the names of their spouses and children. After deletion of the addresses and family names, the practical method to proceed is to allow inspection of the files by the attorneys for the plaintiffs so they can decide whether copying of any record is necessary. I am confident there are many records in the files that will be of no interest to the attorneys for the plaintiffs. To further insure protection of the interests of the defendant Correction Officers, the contents of the Personnel files relevant to the issues of the action are to be discussed by plaintiffs' attorneys with an inmate alleged to be involved with a particular correction officer or officers only to the extent necessary for the conduct of the action and development of the issues. *Kerr v. United States District Court, N.D. Cal., supra,* 426 U.S. at 398, 96 S.Ct. at 2121; *Boyd v. Gullett,* 64 F.R.D. 169, 178 (D.C.Md.1974). No copy of any of the personnel records shall be shown by counsel to any plaintiff inmate or any other inmates. I have confidence that the Prisoners' Legal Service attorneys for the plaintiffs, as evidenced always in my contact with them, as officers of the court will act responsibly in the concern to safeguard prison security and the personal safety and privacy interests of the Correction Officers and their families. The carton of files will be delivered to the Clerk of the Court in Albany to be kept in sealed condition until return to Assistant Attorney General Roberts for compliance with the rulings herein.

■ In Part III of the memorandum of law in opposition to the motion to compel, Assistant Attorney General Roberts requests that if the motion is granted that the issue be certified for immediate appeal pursuant to 28 U.S.C. 1292(b) and 54(b) of the Federal Rules of Civil Procedure. There is no case law cited in support of the request.

There is no basis in law for the grant of the certification request. The court would welcome a definitive appellate ruling in this issue of privilege of official personnel records based on 50-a of the New York Civil Rights Law. The privilege, in my experience, is raised in practically every action under 42 U.S.C. § 1983 against state, county and city law enforcement officers. In the majority of instances, it is not presented until the trial stage when a subpoena is issued for the production of the records.

■ Despite this desire for certainty, the certification requested is not justified legally and logically. The procedure set forth in Section 1292(b) should be used sparingly and only in exceptional cases. *Ratner v. Chemical Bank New York Trust Company,* 309 F.Supp. 983, 988 (S.D. N.Y.1970), *citing* among others *Gottesman v. General Motors Corp.,* 268 F.2d 194 (2d Cir.1959); *see also United States v. Woodbury,* 263 F.2d 784, 788 n. 11 (9th Cir.1959). It has been held that a claim of privilege is collateral to the basic issues of a case, and 28 U.S.C. 1292(b) was intended to permit appellate consideration of questions of law which would end a lawsuit. *United States v. Woodbury, supra,* 263 F.2d at 787–88; *Brown v. Bullock,* 294 F.2d 415, 417–18 (2d Cir. en banc 1961); *see also United States v. Salter,* 421 F.2d 1393, 1394 (1st Cir. 1970). It is not evident to me that there is a controlling question of law that may materially advance the ultimate termination of this action. It is clear that a trial of the issues would be necessary. Certification under F.R.Civ.P. 54(b) is not favored. *See Brunswick Corp. v. Sheridan,* 582 F.2d

175 (2d Cir.1978). The certification request is denied.

To allow time for the defendant Correction Officers, if they be so advised, to seek appellate consideration, the direction for inspection and copying of the personnel files is stayed for ten (10) days only after the receipt of this memorandum, decision and order. *See* F.R.App.P. 8(a).

It is so Ordered.