R.W. JONES, (First Name Unknown) Chapman, and Anchorage, a Municipal Corporation, Petitioners,

v.

James Neil JENNINGS, Respondent.

No. S–2981.

Supreme Court of Alaska.

March 16, 1990.

James M. Bendell and Terry Venneberg, James M. Bendell & Associates, Anchorage, for petitioners.

J. Neil Jennings, Anchorage, pro se.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

BURKE, Justice.

This matter comes before us on petition for review by the Municipality of Anchorage and two of its police officers (hereinafter "the municipality") from an order to produce documents relating to the police officers' personnel records and internal investigations of citizen complaints. The order was issued pursuant to a discovery request by the plaintiff, James Neil Jennings, in an action for assault and battery, false imprisonment and violations under 42 U.S.C. §§ 1983 and 1988. We granted the petition for review in order to address the following issues: (1) whether documents pertaining to prior citizen complaints, as well as personnel records, are privileged and undiscoverable under Anchorage Municipal Code (AMC) 03.90.040; and (2) whether disclosure of personnel records and prior citizen complaints would contravene the officers' right to privacy under the Alaska Constitution. We conclude that the information sought by the respondent is neither privileged nor is its disclosure violative of the Alaska Constitution.

## I. THE FACTS

Jennings was arrested by Officers Jones and Chapman on charges of contributing to the delinquency of a minor, disorderly conduct and resisting arrest. Subsequently, all charges were dropped.

In December 1982, Jennings filed a damage action against the municipality and the two officers, alleging that, during the arrest, "[Officer] Jones assisted by [Officer] Chapman ... assaulted Plaintiff, choking him until he became unconscious." Jennings also alleged a cause of action for false imprisonment. Jennings further contended that the municipality was liable under 42 U.S.C. §§ 1983 and 1988, "because of its policy and custom of encouraging, tolerating, permitting and ratifying a pattern of illegal applications of physical force to citizens."

In March 1987, Jennings served the municipality and Jones with interrogatories requesting information regarding (1) the hiring procedures for police officers; (2) "citizen complaints of the use of excessive force by police officers and of false arrests by police officers made within the last ten years;" and (3) internal procedures, investigations and disciplinary actions taken in response to such complaints. Jennings also sought to elicit information concerning (1) Jones' tax returns, (2) Jones' personnel and payroll records, (3) citizen complaints against Jones based on allegations of excessive force and (4) any information relative to the incident involving Jennings' arrest.[1]

In April 1987, the municipality moved for a protective order, claiming that Jennings' discovery requests were "excessively burdensome in view of the miniscule damages." The municipality also argued that the request for Jones' personnel files should be denied on the ground that it was "expressly prohibited by the Anchorage Municipal Code," a violation of Jones' right to privacy and overly broad in scope. The trial court ruled that Jennings was "generally entitled to the discovery sought," but imposed restrictions: (1) Officer Jones was not required to submit documentation of his arrests for the five preceding years; rather, Jones was to estimate his responses

---

1. Included in interrogatories submitted to Jones were questions concerning (1) Jones' employment history, (2) any suits or complaints brought against him as a police officer, (3) all information concerning arrests made by Jones in the five years previous to the incident, (4) information on any training Jones received and (5) financial information pertaining to Jones' income, insurance and assets.

to questions pertaining to his arrests. (2) Jones was not compelled to answer interrogatories regarding his salary, insurance and assets until Jennings could establish a prima facie case for punitive damages. (3) The municipality was required to answer interrogatories concerning prior citizen complaints for the previous five, rather than ten, years. (4) Finally, with the exception of documents "for which defendant believes disclosure would be irrelevant and unduly prejudicial," the court instructed the municipality to produce Jones' personnel file *in camera* for the court's inspection.

Subsequent to the court's order, Jennings and the municipality entered into two stipulations. The parties agreed that the personnel file of officer Jones as well as information revealing the identity of police officers against whom complaints had been filed would be kept in the custody of Jennings' attorney, and would not be shown to Jennings "except as shall be essential to conduct his lawsuit." Jennings' attorney withdrew as counsel after the files were provided. Thereafter, the municipality moved for a protective order to ensure the return of the files and to prevent Jennings from disclosing confidential information.

The trial court affirmed the terms of the stipulation that as long as Jennings was represented by counsel, he could not have direct access to the files. The superior court also ruled that if Jennings undertook his own representation:

> [Jennings] may have access to these files. However, he will then be subject to a protective order prohibiting him from disclosing the contents of these files to anyone except [new counsel] ... [or] to persons absolutely necessary (relevant witnesses, paralegals) [to prepare] his case. Should [Jennings] make any disclosures not necessary to this litigation and in violation of this order, he shall be subject to contempt charges.

The municipality subsequently filed a petition for review of the trial court's order.

Prior to this court's ruling on the petition, the trial court held a hearing in which the parties agreed to an *in camera* inspection of the documents in issue.[2] After reviewing the documents, counsel for the municipality submitted the information to the court along with a summary of the municipality's grounds of objection in producing the documents. The trial court conducted an *in camera* inspection of the documents and issued an order providing that (1) the documents derived from the police department's risk management unit listing claims against the department were not privileged under AMC 03.90.040; (2) the documents relating to complaints against Jones occurring after Jennings' arrest, and documents pertaining to Jones' alleged verbal harassment as well as allegations later determined to be unfounded, were discoverable; (3) documents regarding complaints against other officers should be produced and (4) documents referring to criminal charges were matters of public record and therefore discoverable. The trial court excluded, however, personal information concerning the police officers' residences and their family members' names, names of minors and suspects in criminal investigations who were never charged.

The trial court concluded that the ordinance relied upon by the municipality did not create a privilege barring discovery and that:

> defendants have repeatedly made bald allegations of harm should this material be produced. The information, however, is directly relevant to the claims set forth in the plaintiff's complaint. Defendants have not been able to substantiate the harm that they believe will flow from the disclosure.... Plaintiff alleges false arrest, assault, and battery.... These contentions are sufficiently serious to warrant liberal discovery.

The municipality moved for reconsideration of this order. The motion was denied. The municipality now seeks review of the trial court's orders.

---

**2.** In response to the agreement reached at the hearing, the municipality withdrew its petition for review.

## II. DISCUSSION

### A. THE MUNICIPAL ORDINANCE DOES NOT CLOAK THE DOCUMENTS WITH A PRIVILEGE AGAINST DISCOVERY

 The trial court's ruling that AMC 03.90.040 does not confer a privilege against discovery and use of the documents is a question of law. As such, we will review the application of the law to the undisputed facts without deference to the trial court. *Foss Alaska Line v. Northland Services,* 724 P.2d 523, 526 (Alaska 1986). The trial court, nevertheless, has broad discretion in determining the extent of discovery and crafting the scope of protective orders. *See Grimes v. Haslett,* 641 P.2d 813, 822 (Alaska 1982) (absent an abuse of discretion, the trial court will not be overturned in ordering sanctions respecting the rules of discovery); *Chemical & Industrial Corp. v. Druffel,* 301 F.2d 126, 129 (6th Cir.1962) (extent of discovery and use of protective orders within trial court's discretion).

The municipality contends that the trial court erred in allowing the discovery of documents relating to prior citizen complaints against Jones and other officers contained in the municipality's personnel records. Specifically the municipality claims that these records were privileged under AMC 03.90.040.[3] Jennings argues that the ordinance does not apply nor does any existing statutory privilege protect the documents at issue from being discoverable.

 In general, the civil rules are committed to a system of liberal pretrial discovery. *See generally United Services*

*Automobile Ass'n v. Werley,* 526 P.2d 28, 31 (Alaska 1974). Alaska Rule of Civil Procedure 26(b)(1) provides that a party may obtain discovery of all relevant matters not subject to any privilege which are "reasonably calculated to lead to the discovery of admissible evidence." The Anchorage Assembly intended a liberal construction of the public access ordinances in order to guarantee the public's right to remain informed:

It is the policy of the municipality to provide the fullest and most rapid public access to municipal records and information so that the right of the people to remain informed is protected. In enacting this measure, the Assembly recognizes the competing interests of personal privacy and the right of the public to have access to information concerning the conduct of the people's business. This chapter shall therefore be liberally construed to require full disclosure of all public records in the possession or control of any municipal agency except those specifically exempted under Section 3.90.040 of this chapter.

AMC 03.90.010 (1985).

The cornerstone of a democracy is the ability of its people to question, investigate and monitor the government. Free access to public records is a central building block of our constitutional framework enabling citizen participation in monitoring the machinations of the republic.[4] Conversely, the hallmark of totalitarianism is secrecy and the foundation of tyranny is ignorance. It has been written that "[i]f a nation expects to be ignorant and free, in a state of civilization, it expects what never was and

---

**3.** AMC 03.90.040 (1985) provides in part:
> This chapter shall not be construed to require disclosure of:
> ....
> (B) Personnel, payroll or medical files, Equal Rights Commission files or other files which reveal the financial or medical status of any specific individual, the release of which would constitute an unwarranted invasion of privacy.
> ....
> (I) Information obtained by and in the custody of insurance carriers insuring the municipality and their attorneys and agents regard-

ing possible and pending claims against the municipality.

**4.** *See, e.g., Environmental Protection Agency v. Mink,* 410 U.S. 73, 105, 93 S.Ct. 827, 845, 35 L.Ed.2d 119 (1973) (Douglas, J., dissenting) ("The generation that made the nation thought secrecy in government one of the instruments of Old World tyranny and committed itself to the principle that a democracy cannot function unless the people are permitted to know what their government is up to.") (quoting Henry Steele Commager, The New York Review of Books, Oct. 5, 1972, at 7).

never will be." [5] True to these principles, the Anchorage Assembly carefully crafted the public access ordinances to guarantee complete access with only a minor limitation. The intent of the Anchorage Assembly is manifest: "All" public records are available for public use and inspection with the specific exceptions enumerated in AMC 03.90.040.

The question now is whether the documents sought by Jennings fall within the ambit of AMC 03.90.040. The municipality objects to the production of Jones' personnel records under subsection (B) of AMC 03.90.040 and to the production of information concerning investigations of citizen complaints under subsection (I) of AMC 03.90.040. The language of AMC 03.90.-040(B) creates a privilege as to information contained in a personnel file which "reveal[s] the financial or medical status of any specific individual. . . ." But this privilege is conditional. Release of this information is barred only where it would "constitute an unwarranted invasion of privacy."

In the present case, the trial court granted discovery concerning Jones' personnel records. The trial court, however, excluded from discovery information pertaining to Officer Jones' family, his address and personal finances. The trial court has properly excluded "financial" information specifically exempted by the ordinance. The municipality nevertheless asserts that leaving the remaining information open for discovery constitutes an "unwarranted invasion of privacy." We reject this contention and turn to *Inmates of Unit 14 v.*

*Rebideau,* 102 F.R.D. 122 (N.D.N.Y.1984), for guidance. In *Rebideau,* state prisoners sought discovery of personnel files of the defendant corrections officers in an action brought under 42 U.S.C. § 1983. 102 F.R.D. at 126. The state objected to producing the documents on the basis of a New York statute which exempted certain personnel records from discovery. *Id.* at 126–27. The court found that, although the statute applied to the corrections officers, the documents were nonetheless discoverable. *Id.* at 129.

■ The *Rebideau* court reasoned that since the complaint alleged a "pervasive pattern and practice of unlawful assault, intimidation and harassment," discovery of the personnel records was "extremely important in the need to support pattern and practice allegations." *Id.* at 128. Further, the court held that the balance of relevant factors, including the federal policy favoring broad discovery in civil rights actions, fell on the side of disclosure. *Id.* at 128–29. This reasoning was found to be especially compelling at the discovery stage. *Id.* at 128. The court in *Rebideau* limited the discovery to the extent that the corrections officers' home addresses and family names were omitted. *Id.* at 129. To further protect the officers, the files were provided only to the inmates' attorneys to be discussed with their clients "only to the extent necessary for the conduct of the action and development of the issues." [6] *Id.* at 129. Thus, the personnel files were found discoverable, albeit minor limitations were imposed to protect specific privacy interests collateral to the cause of action.

**5.** Thomas Jefferson, Letter to Colonel Charles Yancy, January 6, 1816, *partially reprinted in* J. Bartlett, *Familiar Quotations* 473 (14th ed. 1968).

**6.** The municipality argues that Jennings should not be allowed direct access to the personnel records to be turned over directly to Jennings. In *Rebideau,* the court required retention of the records with the attorneys in part because of the "tense relationship . . . exist[ing] between inmates and correction officers . . . [and because] [i]nternal security of a maximum security prison is paramount." *Rebideau,* 102 F.R.D. at 129. In the case *sub judice,* no such institutionally antagonistic relationship inures. The mere fact

that Jennings is representing himself does not, without more, preclude his right to personally inspect the files. In addition, documents turned over to a party's counsel may at times be regarded as in the party's possession or control for purposes of discovery. Thus, there may be no possessory distinction between a client and his attorney. One is merely the agent of the other. *Williams v. Consolidated Investors,* 205 Kan. 728, 472 P.2d 248, 252 (1970). Finally, the court admonished Jennings that he was not to divulge confidential information to nonparties—or face contempt proceedings. We therefore reject the municipality's argument.

Other courts have allowed the discovery of personnel records in similar actions maintained against police departments and individual police officers. *See, e.g., Elliott v. Webb,* 98 F.R.D. 293, 297–98 (D.Idaho 1983); *Crawford v. Dominic,* 469 F.Supp. 260, 264–65 (E.D.Pa.1979); *City of Phoenix v. Peterson,* 11 Ariz.App. 136, 462 P.2d 829, 833–35 (1969); *State ex rel. Att'y Gen. v. First Judicial Dist. Ct.,* 96 N.M. 254, 629 P.2d 330, 333–36 (1981); *Thomas v. New York City Transit Police Dep't,* 91 A.D.2d 898, 457 N.Y.S.2d 518, 519–20 (1983) (police personnel files discoverable, however, judicial supervision needed in the form of *in camera* inspection prior to disclosure); *Wunsch v. City of Rochester,* 108 Misc.2d 854, 438 N.Y.S.2d 896, 898–900 (N.Y.Sup. Ct.1981) (police personnel files fell within scope of statutory privilege implicating prior *in camera* inspection, files deemed unprivileged discoverable); *Montes v. State,* 94 Misc.2d 972, 406 N.Y.S.2d 664, 666–68 (N.Y.Ct.Cl.1978). There is contrary author-

ity, and instances were police personnel files were ruled privileged. *See City of Los Angeles v. Superior Court,* 33 Cal. App.3d 778, 109 Cal.Rptr. 365, 369–70 (1973). But in light of the ordinance adopted by the Anchorage Assembly,[7] and its intent to make all municipal records [8] available for public inspection subject only to minor limitations, and considering the importance of the public's interest in free access to government records,[9] we conclude that the trial court properly ordered the documents discoverable subject to prior *in camera* inspection for the purpose of screening particularly sensitive files.[10]

## B. THE ORDER GRANTING DISCOVERY WAS NOT VIOLATIVE OF THE ALASKA CONSTITUTION

The municipality asserts that the discovery requests concerning prior citizen complaints and personnel records are "unnecessarily intrusive into the privacy of the officers involved." Unlike the federal

7. The municipality's contention that the documents are privileged under subsection (I) of AMC 03.90.040 lacks merit. Subsection (I) is aimed at protecting the work product of the municipality's insurer. Thus, documents "obtained by and in the custody of insurance carriers ... regarding possible and pending claims against the municipality" are privileged. The municipality has made no showing that any of the information sought by Jennings was "in the custody" of its insurer. The discovery requests therefore fall outside the reach of subsection (I) and are not privileged.

8. We note also that the information sought is not privileged by state law. AS 09.25.120 sets forth the state policy of allowing access and inspection of public records, providing certain exceptions not implicated here. We need not decide today whether AS 39.25.080 includes municipal employees, such as police officers; or whether this provision would preclude a party litigant from discovering the personnel files of a state employee for litigation purposes as neither party has argued the point on appeal. *Lewis v. State,* 469 P.2d 689 (Alaska 1970).

9. Our decision today comports with our reasoning in *Doe v. Alaska Superior Court, Third Judicial Dist,* 721 P.2d 617 (Alaska 1986). In *Doe,* we held that letters sent to the governor regarding a state board appointee were not privileged from discovery in a defamation suit as the letters were assumed not to constitute part of the "state personnel record" under AS 39.25.080(a). *Doe,* 721 P.2d at 622. Because the letters were

not privileged under AS 39.25.080, the general provisions of AS 09.25.110–.120 governed. *Id.* The Alaska public records statute expresses a similar philosophy of free access to government records as that embodied in AMC 03.90.040. We recognize but do not decide that the municipality's disclosure ordinance is broader than the state's disclosure statute in that the state has created more exceptions to disclosure, *i.e.,* AS 09.25.120 and AS 39.25.080(a).

10. The municipality also contends that production of investigative reports relative to complaints concerning officers other than Jones should be prohibited. The question whether information regarding other officers is properly discoverable may turn on the pleadings. *Rebideau,* 102 F.R.D. at 128–29. In the present case Jennings alleged a "policy and custom" within the police department of "encouragaing, tolerating, permitting and ratifying" certain police misconduct. After an *in camera* inspection, the trial court ruled on the relevancy of the information regarding other officers and police practices. We find the trial court's *in camera* examination and relevancy determination sufficient to protect the privacy interests of the officers. *See Pima County v. Harte,* 131 Ariz. 68, 638 P.2d 735, 737 (App.1981) (*in camera* inspection necessary prerequisite to discovery of police department internal affairs records); *Rassman v. Superior Court,* 134 Cal.App.3d 759, 184 Cal.Rptr. 751, 755 (1982) (trial court ordered to conduct *in camera* inspection of internal records prior to production).

right to privacy, which originates from a broad interpretation of the due process clause of the fourteenth amendment [11] or emanations from the ninth amendment,[12] the Alaska Constitution expressly protects the right of privacy for Alaska citizens.[13] We have discussed previously that one who asserts a right to privacy must exhibit a subjective expectation of privacy "that society is prepared to recognize as reasonable." *State v. Glass*, 583 P.2d 872, 875 (Alaska 1978). It is plausible for an employee to expect that the details contained within his personnel file are confidential and not subject to public scrutiny. Yet we do not approach this case, and the officers' right to privacy, in a vacuum. The right to privacy is not absolute. *Messerli v. State*, 626 P.2d 81, 83 (Alaska 1981); *Doe*, 721 P.2d at 630 (discussing nonabsolutism of right to privacy and quoting *Ravin v. State*, 537 P.2d 494, 504 (Alaska 1975)). Rather, "there must be ... a balancing of conflicting rights and interests." *Messerli*, 626 P.2d at 83.

In *Martinelli v. District Court*, 199 Colo. 163, 612 P.2d 1083 (1980), the court, facing a similar challenge to discovery based on the right to privacy, conducted the following inquiry:

(1) does the party seeking to come within the protection of the right to confidentiality have a legitimate expectation that the materials or information will not be disclosed?

(2) is disclosure nonetheless required to serve a compelling state interest?

(3) if so, will the necessary disclosure occur in that manner which is least intrusive with respect to the right to confidentiality?

*Id.* at 1091; *see also El Dorado Savings & Loan Ass'n v. Superior Court*, 190 Cal. App.3d 342, 235 Cal.Rptr. 303, 305 (1987). We find this analysis persuasive in the instant context and consistent with our prior cases on the right to privacy.[14] Thus, we apply it here.

There can be little doubt that Jones does have a "legitimate expectation that the material or information will not be disclosed." The municipality correctly points out that personnel files "contain the most intimate details" of an employee's work history. What then, is the state interest in compelling disclosure? We have already set forth the state's interest in maintaining and preserving our system of government by ensuring openness.[15] There is perhaps no more compelling justification for public access to documents regarding citizen complaints against police officers than preserving democratic values and fostering the public's trust in those charged with enforcing the law. Another factor weighing in favor of disclosure is ensuring the effective functioning of the judiciary. In the context of executive privilege we reasoned that the privilege of confidentiality was qualified: "[i]n each case a court must balance the government's interest in confidentiality against the need for disclosure to insure the effective functioning of the judicial sys-

11. *See Carey v. Population Services International*, 431 U.S. 678, 684, 97 S.Ct. 2010, 2015, 52 L.Ed.2d 675 (1977).

12. *See Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965).

13. Alaska Const., art. I, sec. 22 provides:
The right of the people to privacy is recognized and shall not be infringed.

14. In *Falcon v. Alaska Public Offices Comm'n*, 570 P.2d 469, 476 (Alaska 1977), we set forth the following:
Neither the state nor the federal right to privacy is absolute, but it is part of the judicial function to ensure that governmental infringements of this right are supported by sufficient justification.... Under the Alaska

Constitution, the required level of justification turns on the precise nature of the privacy interest involved.... Thus, to determine the validity of the disclosure provisions of the [disclosure law in question], we must consider both the nature and the extent of the privacy invasion and the strength of the ... interest requiring disclosure.
In the present case of employer personnel records the nature of the privacy right is important, but less compelling than privacy rights implicated in home or familial situations, *see Ravin v. State*, 537 P.2d 494 (Alaska 1975). The strength of the interests requiring disclosure far outweigh the officers' privacy interests in their personnel records.

15. *See supra* notes 4 and 5 and accompanying text.

tem." *Doe,* 721 P.2d at 623. We further note that, as observed in the introductory comment to Article V (Privileges) of the Alaska Evidence Rules Commentary, this state has taken a forceful position against shielding official information:

> [i]n refusing to recognize an official information privilege, Alaska rules take the view that in the rare case when internal government documents would be relevant to litigation, they should be disclosed. Protective orders under the discovery rules are available to mitigate any unfortunate consequences that might flow from [this] position. Also, the legislature remains free to enact statutes to protect certain infor[m]ation that may be especially sensitive.

Alaska R.Evid. Art. V introductory comment at 366. We find the public policy considerations of openness, free access to the workings of government, insuring the effective operation of our judicial system, and preservation of our democratic ideals compelling.[16] Further, the state has a strong interest in providing a remedy to one tortiously injured by a public employee in addition to an interest in "facilitating the ascertainment of truth in legal proceedings." *Martinelli,* 612 P.2d at 1092. The only remaining question under our state constitution is whether the disclosure occurs in the least intrusive manner.

The trial court ordered that Jones' personnel records be disclosed in a manner in which his family's name and address, as well as his personal financial information would be protected. Balancing the concern for protecting Jones' privacy with the need to "insure that police behavior conforms to the code of conduct required of a democratic society," the trial court deemed Jennings' allegations of police misconduct "sufficiently serious to warrant liberal discovery." The trial court therefore concluded that the state's interest in production of the documents was paramount over the asserted claim of privilege. The *in camera* inspection conducted by the trial court is the appropriate means for guaranteeing the privacy of the parties involved. By excluding prejudicial and irrelevant information, the *in camera* inspection promotes minimal intrusion into the essentially private and confidential matters that must come to light in the present cause of action. We hold that the trial court did not abuse its discretionary supervisory role over the discovery matters pending before it.

AFFIRMED.

**16.** We note that we have adopted a compelling state interest standard when faced with an infringement of a fundamental right. *Breese v. Smith,* 501 P.2d 159, 169 (Alaska 1972) ("Once a fundamental right under the constitution of Alaska has been shown to be involved and it has been further shown that this constitutionally protected right has been impaired by governmental action, then the government must come forward and meet its substantial burden of establishing that the abridgment in question was justified by a compelling governmental interest.").